## A. H. TOSPON v. MARY SIPE, ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF SOMERSET
COUNTY.

Argued February 8, 1887—Decided Oct. 3, 1887.

In proceedings in partition resulting in the sale of a decedent's land, the widow's dower interest was fixed in a decree of distribution. A subsequent purchaser confessed a judgment to the widow and the heirs expressly to secure the dower interest, and the lien of the judgment was preserved by several revivals. Subsequently, the annual interest being in arrear, by *vend. ex.* process on said judgment, the land was sold under a notice that the sale was subject to the dower interest, and, the annual interest again becoming in arrear, a *scire facias* was issued to revive the judgment against the sheriff's vendee: *Held* that the lien of the judgment had not been divested by the sheriff's sale.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

No. 100 January Term 1887, Sup. Ct.; court below, No. 227 September Term 1884, C. P.

This was a *scire facias* to revive a judgment against A. H. Tospon, as *terre-tenant*, which stood on the record of the court below in favor of Mary Sipe, widow, and Jonathan J. Sipe et

Statement of Facts.

al., heirs at law of Jacob Sipe, deceased, against George Humbert's executors and Joseph Humbert, *terre-tenant.*

In 1861, Jacob Sipe died intestate, leaving a widow, Mary Sipe, and seven children, Jonathan J. Sipe and others, and seized of a tract of land in Milfred township containing 132 acres and 34 perches. By proceedings in partition begun in February, 1861, it was so proceeded in that the land was sold by trustees to Henry J. Humbert, an account settled and confirmed, the dower of the widow fixed at $361.69, and the share of each of the seven children therein at the widow's death at $51.67. Henry J. Humbert died in 1864, but before his death he had contracted to sell said tract to George Humbert, providing in the contract that a residue of purchase money, $361.69, was to remain a lien on the land, the interest to be paid annually to the widow of Jacob Sipe, deceased, and the principal at her death to Jacob Sipe's heirs. In 1865 by proceedings in the Orphans' Court upon the petition of George Humbert this contract was proved, a decree of specific performance made, and a deed ordered. In the deed, dated May 4, 1865, made by the administrator of Henry J. Humbert in pursuance of said order, the proceedings are recited, and that George Humbert bought said land subject to said dower of $361.69, the interest payable to the widow annually and the principal to said heirs at her death. This deed was recorded. George Humbert, February 9, 1865, executed a judgment note to the widow and heirs of Jacob Sipe, deceased, for $361.69, the interest and principal payable as provided in said contract and afterwards recited in said deed, on which note judgment was confessed and entered. This judgment was revived in 1870 against George Humbert; in 1865 against M. A. Sanner and P. J. Baker, his executors, and Joseph Humbert, *terre-tenant,* and to No. 446 August term, 1879, was again revived against said executors and *terre-tenant,* for $432.57, $361.69 payable as aforesaid, and $70.68 presently, being arrears of interest due the widow. A *fi. fa.* was soon afterwards issued for said arrears of interest, the said tract of land levied upon, at November term, 1879, condemned, and on April 25, 1872, on a *vend. ex.* to No. 65 April term, 1882, sold to A. H. Tospon for $390. At the death of George Humbert, another and subsequent dower principal of $500 was placed on the

land. Two yearly payments of interest to Mrs. Sipe were made by Tospon after his purchase.

On August 24, 1884, the *scire facias* in which this suit arose was issued to revive judgment No. 446 August term 1879, with notice to A. H. Tospon, *terre-tenant.* Tospon, on November 15, 1884, pleaded payment, with leave to give evidence in support of the following special matter, to wit : That the judgment was entered to secure part of the purchase money of a tract of land which was sold to George Humbert ; that the land was afterwards sold to Joseph Humbert ; subsequently executions were issued on the judgment, by virtue of which the land was levied and sold by the sheriff to A. H. Tospon for $390 and deed for same acknowledged and delivered ; that the lien of said judgment was thereby divested, and that Tospon had no other land bound by the lien of this judgment. Upon this plea issue was joined.

On the trial, as evidence of the facts hereinbefore stated, the plaintiff offered in evidence the Orphans' Court record of the " proceedings in partition in the estate of Jacob Sipe, deceased ; to be followed by showing that this dower was fixed then and sale had of this land, which was sold subject to this dower of $361.69, and that it finally became vested in this defendant." Objected to, " because this is a *scire facias* on a judgment, and we have nothing to do with the proceedings prior to the obtaining of that judgment." Objection overruled, evidence admitted ; exception.[1]

The plaintiff then offered the Orphans' Court record of the " decree of specific performance of contract of Henry J. Humbert's administrator. This for the purpose of showing that the land was sold and became vested in Henry J. Humbert, and this is a decree of specific performance from Henry J. Humbert to George Humbert subject to this dower. Objected to for the same reason as the first offer." Objection overruled, evidence admitted ; exception.[2]

Anthony Shoemaker, called on part of the plaintiff:

The plaintiff's counsel proposed to prove by this witness, and others to be called, that at the time of this sheriff's sale to the defendant, Tospon, it was a condition of the sale, announced by the crier and by the counsel of the plaintiff, who issued the writ, that the sale was made subject to the dower of

the widow Sipe and the heirs, of $361.69 as secured by a judgment of this court; and that Tospon agreed to buy on these terms, and did buy on these terms, and subsequently paid the interest to the widow for the years 1883 and 1884; and that he bought it by reason of this agreement at the time he purchased it for much less than he could have bought it for otherwise. Objected to.

By the Court: We propose to receive this evidence, inasmuch as the question raised here can be raised on a point, and then we will have the whole question before us. Objections overruled, evidence admitted; exception.[3]

The plaintiff's counsel proposed to ask the witness how much more he would have bid than Tospon bought it at, if it had not been for that announcement, and to show that he would have given considerably more than Tospon bought it at, if it had not been for this announcement. Objected to as incompetent. Objection overruled, question allowed; exception.[4]

Under these offers there was testimony on the part of the plaintiff tending to show that at the sheriff's sale the real estate was sold expressly to be subject to the dower of widow Sipe. On the part of the defendant testimony was adduced that no notice was given at the sale as claimed by the plaintiff; that defendant had no knowledge of the dower judgment until after the property was knocked down to him, and that under legal advice that its lien was divested he had paid the purchase money and accepted the title.

The court, WILLIAM J. BAER, P. J., charged the jury *inter alia* as follows:

The plaintiff now alleges that Tospon bought this property subject to the claim of $361.69 that was to be paid after the death of the widow of Jacob Sipe and the interest thereon annually during her life; and having bought subject to that, that the judgment, so far as the principal sum was concerned, was not extinguished but remained and could be enforced, so far as to collect the interest that might accrue from time to time in the future; and inasmuch as that judgment would lose its lien in five years, they claim they have a right to issue a *scire facias* to revive the lien on the premises. There is no

question that ordinarily to issue an execution on a judgment and sell the land bound by it, is a divesture of all liens. There are, however, some exceptions; it depends on the order in which the liens stand. Sometimes there is a fixed lien that is not discharged, and then there is a kind of statutory dower that is an estate, and so on. [The question here is, how did this man buy?

We charge you that if you find from the evidence in the case, that the defendant, at the time he bought at the sheriff's sale, bought the land subject to the payment of $361.69 payable at the death of the widow of Jacob Sipe, to the heirs of Jacob Sipe, deceased, and interest thereon annually to the widow of Jacob Sipe during her natural life; and also find that the judgment then existing is a lien on the land against the defendant in the execution in favor of the said widow and heirs of Jacob Sipe, deceased, conditioned for the payment of this $361.69 to the heirs of Sipe at the death of the widow and the interest thereon annually during her life to the widow; and further find that the execution issued upon that judgment for the unpaid arrears of interest due the widow on the judgment upon which, in due course, the premises so bound by the judgment were sold to the present defendant, then the principal sum named in the judgment was not divested, and, as to it, the judgment was not discharged, but continued to be a lien on the premises in the hands of this purchaser, Tospon, and would so continue to be a lien for five years from the date of the entry of the judgment; and if you find that the five years had not expired at the time this *scire facias* issued, then the plaintiff could proceed on the judgment to enforce the payment of the interest in arrears while so kept alive as a lien ] [5]

[From this, the question, as we view it, turns on this—Did Tospon buy subject to this lien or not; had he notice that he was buying subject to an encumbrance of this kind? It does not turn on whether he assented to it, but on whether there was notice given at the time that it was sold subject to such a lien, and whether Tospon was there and had notice of it.] [6]

We are asked to charge you upon certain points.

Defendant's points:

1. That the sale of the property to Tospon having been

made upon an execution issued upon the judgment on which the *scire facias* in this case was issued, said sale operated as an extinguishment of the lien of the judgment and discharged the land from all liability thereon by the purchaser.

Answer: As a general principle the law raised in this point is correctly stated; but as to this case, whether it was or not extinguished depends upon how you shall find as to the question of the defendant's having bought subject to the claim secured by this judgment.[7]

2. That even if the jury believe that notice was given at the sheriff's sale that the land was encumbered by a dower of the widow Sipe, that could not operate to make the defendant, Tospon, liable for this judgment.

Answer: If you find the judgment was for the same thing as the statutory dower referred to in the point, we refuse the point. If you find the judgment was not for the same thing as the so-called widow's dower in the point, we affirm it.[8]

3. That there is no evidence in this case that the defendant, Tospon, assumed to pay the judgment in suit, and therefore the verdict must be for the defendant.

Answer: This we refuse, and leave it to you to determine from the evidence.[9]

4. That even if there is any liability on the part of the defendant, Tospon, to pay the dower of the widow Sipe, such liability cannot be enforced by *scire facias* on this judgment.

Answer: This we refuse.[10]

5. That under all the evidence in this case the verdict must be for the defendant.

Answer: This we refuse.[11]

Under this charge and the answers to the points, the jury found a verdict in favor of the plaintiff for the principal sum of $361.69, with interest from April 28, 1884, payable according to the terms of the judgment upon which the *scire facias* had issued, etc., whereupon the defendant took this writ, assigning for error:

1–4. The admission of the plaintiff's offers.[1–4]

5. The part of the charge embraced in [ ][5]

6. The part of the charge embraced in [ ][6]

7–11. The refusal of the defendant's points.[7–11]

*Mr. Ruppel* of *Coffroth & Ruppel, (Mr. W. H. Koontz* and *Mr. H. S. Endsley* with him), for the plaintiff in error:

1. The court was not warranted in admitting as evidence the O. C. records in the estates of Jacob Sipe and Henry J. Humbert. These proceedings were anterior to the date of the judgment sought to be revived, and without continuity. Besides, the pleadings raise no such question as would warrant the admission.

2. The testimony of Anthony Shoemaker and others, was improperly admitted to prove that the sheriff's sale was made subject to the dower of Mrs. Sipe "as secured by judgment and that Tospon agreed to buy on these terms," etc. Not one witness says the land was sold subject to that dower as secured by judgment, or that Tospon agreed to buy on these terms.

3. The sheriff's sale on the writ of *vend. ex.* on the judgment, divested the lien of said judgment as to the title of the defendants therein in the tract sold to Tospon. This judgment is simply a judgment. The widow's dower is an estate; the judgment is merely an additional, collateral, and cumulative security and merely affords her an additional, collateral and cumulative remedy for the collection of the interest due her: Eshleman v. Witmer, 2 W. 263; Wynn v. Brooke, 5 R. 108; Hise v. Geiger, 7 W. & S. 273; Shaupe v. Shaupe, 12 S. & R. 12; Turner v. Hauser, 1 W. 420; Miller v. Leidig, 3 W. & S. 458; Thomas v. Simpson, 3 Penn. St. 69; Zeigler's App., 35 Idem 173; Mentzer v. Menor, 8 W. 296; Schall's App., 40 Penn. St. 170; Helfrick v. Weaver, 61 Idem 385; Wertz's App., 65 Idem 306; Gourley v. Kinley, 66 Idem 270. The plaintiffs below cannot claim that the sale was not for the debt, but for the interest, and that the interest is not part of the debt: Berger v. Heister, 6 Wh. 210; Hartz v. Woods, 8 Penn. St. 471; Clarke v. Stanley, 10 Idem 472; West Branch Bank v. Chester, 11 Idem 282.

4. It is plain from all the testimony that there was no clearly proven agreement or contract between Tospon and the plaintiff below, by which Tospon bought subject to the judgment. Such was the case in the authorities relied on by the plaintiffs below: Zeigler's App., 35 Penn. St., 173; Crooks v. Douglass, 56 Idem 51; Ashmead v. McCarthur, 67 Idem 326. But whether there was such an agreement or not, will

this court hold that the land can be sold twice for the payment of the same debt? And suppose, for the argument, that there was a notice that the sale was subject to the dower, and that Tospon heard it, that could not preserve the lien of the judgment. Nothing was said at the sale as to selling subject to the judgment. Besides, the sheriff has no power to trammel a title by the notice, or to make any conditions by which a lien shall be continued or created: Reigle v. Seiger, 2 P. & W. 340; Hellman v. Hellman, 4 R. 447; Aulenbaugh v. Umbehauer, 8 W. 48; Umbehauer v. Aulenbaugh, 3 W. & S. 259.

*Mr. Valentine Hay,* for the defendants in error:

1. The Orphans' Court records were admissible to show that the incumbrance which we contend was not divested, was a dower interest not discharged by such a sale. The sale was not made on a lien that was prior to the dower judgment, nor to collect the dower principal, but simply the two years interest due the widow; and her yearly interest is not such a lien as can be discharged by a sheriff's sale, unless where the sale is on a judgment or mortgage prior to the widow's dower: Fisher v. Kean, 1 W. 262; Mentzer v. Mener, 8 W. 296; Medler v. Aulenbach, 2 P. & W. 359; Helfrich v. Weaver, 61 Penn. St. 390; Vandever v. Baker, 13 Idem 125; Baily v. Com., 41 Idem 473; Reed v. Reed, 1 W. & S. 235; Hillbish's App., 89 Penn. St. 490; Moore v. Shultz, 13 Penn. St. 102; Luther v. Wagner, 107 Penn. St. 345.

2. Tospon bought expressly subject to the conditions of sale, to pay the widow the interest of the dower judgment, $21.70 annually during her life, and the principal at her death—a condition which it was proper to make and announce: Muse v. Letterman, 13 S. & R. 167; Stackpole v. Glassford, 16 S. & R. 166; Tower's App., 9 W. & S. 103; Loomis's App., 22 Penn. St. 312; Zeigler's App., 35 Idem 173; Crooks v. Douglass, 56 Idem 53; Ashmead v. McCarthur, 67 Idem 329.

3. The evidence warranted the finding: Reese v. Reese, 90 Penn. St. 89; Little Schuylkill Nav. Co. v. French, 81* Penn. St. 366; Jamieson v. Pomeroy, 9 Idem 230.

OPINION, MR. JUSTICE GREEN.

The learned court below, conceding that in any ordinary case a sale of land by execution upon a judgment which was

a lien on the land sold, would divest the land of all liens, left this cause to the jury on the question whether the defendant, Tospon, bought this land expressly subject to the lien of the judgment for the principal of the widow's dower; and on that question the jury found against the defendant. It was a question of pure fact, and upon the testimony taken the jury could not, consistently with their duty, have found any other verdict than the one they did find. The evidence for the plaintiffs was simply overwhelming, not only that the sale was made subject to the dower, but that Tospon agreed to it.

The proceedings in partition in the estate of Jacob Sipe showed that the land was ordered to be sold subject to the dower, the amount of the principal and the annual interest payable to the widow during her life, being expressly stated. Subsequently, in the estate of Henry J. Humbert the Orphans' Court record showed that a decree was made for the specific performance of a contract for the sale by Henry J. Humbert to George Humbert of the land in question; the purchase money being $1,765, of which $1,403.31 had been paid by George Humbert to Henry J. Humbert during his life, the remainder, $361.69, being the principal of the widow's dower, subject to the payment of which to the heirs of Jacob Sipe at the widow's death, and the interest to her annually during her life, the sale was made. The record of the court of Common Pleas showed that at the same time the above decree was made by the Orphans' Court, a judgment was entered against George Humbert in favor of the widow and heirs of Jacob Sipe deceased for $361.69, payable, $21.70 on the 28th of April, 1866, and annually thereafter to Mary Sipe, widow, during her natural life, and at her death the said sum of $361.69 to the heirs of Jacob Sipe deceased. The same record also showed that this judgment was regularly revived in 1870, in 1875 and in 1879. When the last judgment of revival was entered it was stated on the record to be " for $432.37 being for $361.69, with interest, from 28th April, 1879, and payable as aforesaid, and $70.68 arrears of interest due the widow Sipe, due presently." Upon this judgment a *fi. fa.* was issued for $70.68 interest due the widow, real estate levied, condemned, inquisition approved, and sold to A. H. Tospon for $390.

The present proceeding is a *scire facias* to revive the judg-

ment against Tospon issued in 1884, he having bought the
land in 1879. It was therefore apparent upon the record of
the judgment itself, that the principal sum was not payable
and could not be paid until after the death of the widow Sipe;
that the execution had only issued for the arrears of interest
due the widow, and that she only could take any part of the
proceeds. None of the remainder of the proceeds could be
taken by the heirs of Jacob Sipe; it could only be applied to
subsequent liens or paid to the defendant in the execution.
Of all of the foregoing facts the defendant Tospon was abund-
antly notified by the record and was chargeable with every
consequence of such knowledge. In addition to this it was
most fully and particularly testified by nine witnesses that,
at the sheriff's sale, when Tospon purchased, it was distinctly
announced to all bidders that the sale was made subject to
this dower of the widow Sipe. The crier testified that he
gave notice three or four times that there was a dower of $361
" and who bought the farm bought subject to that dower."
The Sipe dower was named; the crier said, " There was talk
about it, but I announced it distinctly that the farm would be
sold subject to that dower." He also said that Tospon was
present only a few feet distant, and Tospon was the purchaser.
Notice to the same effect was also given by Mr. Hay. Some
question having arisen at the sale as to whether there were
two dowers on the land, to wit, the Sipe dower and another in
favor of George Humbert's widow, Tospon notified the deputy
sheriff that he had heard there was an additional dower on the
land, and he would not take it, and he refused to pay the ten
per cent. down money. Then George Spangler agreed to take
it and his name was inserted as purchaser in place of Tos-
pon's; but in the meantime Tospon had left the office, but
presently returned, and said he would take it and his name as
purchaser was restored. George M. Baker testified that im-
mediately after the sale he told Tospon that there were two
dowers on the land, one of which was in favor of his mother,
" and he was running the risk of buying that also, and on the
strength of that he went to the sheriff, and I went with him
and he told him if there were two dowers he wouldn't take
the property, that he was willing to take it at one but not
two. He was willing to take it at the Sipe. I was right with

him because that was my business." On cross-examination
he was asked: " Q. Didn't he say if there was a dower on it
he didn't want it? A. No, sir, he said if there were two dow-
ers; I wasn't interested in the Sipe dower; I told him about
that; he said he was willing to take it at one but if there were
two he wouldn't have it; he understood the Sipe dower
already." In addition to the foregoing, Tospon, during two
years succeeding the sale, paid to the widow her annual inter-
est, thus fully recognizing her right to have it and his obliga-
tion to pay it. It is true he denied that he agreed to pay the
Sipe dower, and also that he heard any of the notices at the
sale that the land was sold subject to the dower. But he
admits that he heard something about dower and consulted
Mr. Coffroth about it, who advised him that the judgment was
divested, and after that paid the ten per cent. down money and
claimed the land under his purchase though others wanted to
take it with the dower on it. In view of this admission and
of the overwhelming force of the testimony against him, it is
a matter of no wonder that the jury disbelieved him and found
that he did buy subject to the Sipe dower.

Assuming then this fact as established by the verdict, the
question arises was the lien of the judgment for the principal
of the dower or widow's third divested by the sale?

It is true as a general rule that a sheriff's sale of land bound
by a mortgage, upon a judgment obtained for arrears of inter-
est due on the mortgage debt, divests the lien of the mortgage,
and that, although the principal debt is not yet due. The
reason is that the interest is a part of the debt and no distinc-
tion can be taken between a judgment for the interest and a
judgment for the principal: The West Branch Bank v. Ches-
ter, 11 Penn. St. 282. That reason does not exist in the pres-
ent case because here there is not, and cannot be, an identity
of interest and principal. The interest belongs alone to the
widow; the principal belongs alone to the heirs, and they can-
not have it until after her death. She has not and never can
have any right or title to any part of the principal, and hence
a judgment for the interest is in no sense a judgment for the
principal or any part of it.. It is not due to the same persons
nor in the same right, and cannot be considered as identified
with it, either in fact or in legal contemplation.

There is another distinction between the interest due a widow, and the principal also for that matter, and the interest and principal of an ordinary mortgage debt. The latter is a lien only upon the land, and may be divested by a judicial sale. But the former is an estate in the land which cannot be divested except by a sale upon some prior lien: Fisher v. Kean, 1 W. 262; Helfrich v. Weaver, 61 Penn. St. 390. In Luther v. Wagner, 107 Penn. St. 343, Mr. Justice TRUNKEY in delivering the opinion of the court said: " In view of the nature of the widow's estate her annual interest cannot be deemed merely as interest on money. Unlike the lien of a judgment or most other liens, her estate is unaffected by a judicial sale of the land. A lien like a judgment, which will be discharged by a sheriff's sale of the land, whether due or not, if the proceeds be sufficient, will be paid with accruing interest till date of sale, and the purchaser takes the land freed from such lien. But the widow's estate is not a lien, and the rent, or interest in the nature of rent, which had not become due before the sale, remains as part of her estate." In Vandever v. Baker, 13 Penn. St. 121, COULTER, J., said: " If the land was taken at the appraisement by Phineas and Evan Baker as their purpart of their father's estate, and the $1,650 mortgage was to secure the annual interest of the one third to Ann Baker, their mother, and to secure the payment of the principal sum to the heirs and legal representatives of Levi Baker, their father, after her death, the lien could not be divested, either by the mortgage which would be cumulative, or by the Orphans' Court sale, because the act of assembly in such case makes it a lien upon the land, no matter into whose hands it might fall by sale or otherwise. It is an indefeasible charge for the widow and the heirs and legal representatives after her death." In the case of Bailey and Pott v. Commonwealth, 41 Penn. St. 473, the acceptor of land on proceedings in partition, gave but one recognizance for the whole appraised value of the land, the widow's share not being provided for. The land was subsequently sold under a judgment obtained against the acceptor. After the death of the widow the heirs brought a *scire facias* to recover the principal of the widow's third, and the question was whether they could recover it, it being unquestioned that as a mere obligation for the payment of the

shares due the heirs its lien was divested by the sheriff's sale.
It was held there could be a recovery, because the recogni-
zance necessarily included the widow's share which was a fixed
charge upon the land and could not be divested.  It is plain
therefore that there is no analogy between the cases in which
the lien of a mortgage is held to be divested by a.sale on a
judgment obtained for interest, and a sale simply on a judg-
ment for the arrears of interest due to a widow.  Her judgment
is a mere cumulative remedy and we are inclined to think it
may be enforced even though it becomes a part of a judgment
entered for the principal, when it is specially set forth in the
judgment that the principal is not payable till after the death
of the widow, and the writ of execution issues for the arrears
of interest only, due to the widow.  We see no essential legal
reason why this may not be done as well by means of a judg-
ment as by a mortgage.   But whether this be so or not, in the
present case it has been established, that the defendant bought
the land expressly subject to the payment of the dower.   In
several cases we have held that where one purchases land at a
sheriff's sale upon condition that it shall be subject to a lien
which would otherwise be divested, the purchaser takes the
land subject to such lien.    Instances of this are found in
Muse v. Letterman, 13 S. & R. 167; Stackpole v. Glassford,
16 Idem 166; Tower's App., 9 W. & S. 103; Loomis's Ap-
peal, 22 Penn. St. 312; Zeigler's Appeal, 35 Idem 173;
Crooks v. Douglass, 56 Idem 53; Ashmead v. McCarthur,
67 Idem 329.

In Crooks v. Douglass, AGNEW, J., indicated that there had
been a conflict of opinion in this court upon this subject; but,
without calling in question the authority of any of the cases
he rested the decision of that case upon, the fact was that the
vendee of the purchaser at sheriff's sale had knowledge that
the land had been purchased subject to the lien of the mort-
gage which would have been otherwise divested, and hence he
was estopped from alleging that the land was discharged of
the lien, and it was therefore enforced against him.   He con-
ceded however, what several of the cases decided, that the
purchaser at sheriff's sale would himself be bound by the
terms of the sale because he was a party to it.   That is enough
for the purposes of the present case, since here the defendant

himself was the purchaser. Judge AGNEW thought that the ground of estoppel was the true basis upon which to rest the doctrine, and that theory was quite applicable to the facts of that case. But in Ashmead v. McCarthur, THOMPSON, C. J., placed it upon the broader ground of contract which should at least be enforced as between the original parties, however it might be if subsequent purchasers were interested. Either ground is applicable to the present case, for it is undoubted that Tospon got the land at the sheriff's sale for at least as much as the amount of the dower less than the price the land would have brought, had it not been for the notice of the dower at the sale and his own action at the sheriff's office. We think the case was rightly decided both on the facts and the law.

Judgment affirmed.