[No. 3450.  Decided April 24, 1900.]

M. J. PHELAN, *Respondent,* v. A. L. SMITH, *Treasurer of the County of Spokane, Appellant.*

INJUNCTION—SALE OF PERSONALTY FOR TAXES—INADEQUACY OF LEGAL REMEDY—SUFFICIENCY OF COMPLAINT.

A complaint states a cause of action for remedy by injunction, when it alleges that the county treasurer threatens to seize and sell plaintiff's counters and shelving, which he had affixed to his store building after purchasing them from one who owed delinquent taxes thereon, without notice of the tax lien; that the removal of such fixtures would seriously interfere with his business and cause him irreparable damage, which cannot be estimated in money, and that plaintiff is without any complete and adequate remedy at law, and is without any remedy unless the treasurer be restrained from taking possession and selling said property.

TAXATION—LIEN UPON PERSONAL PROPERTY—WHEN ATTACHES.

Under Bal. Code, § 1740, which provides that "the taxes assessed upon personal property shall be a lien upon all of the real and personal property of the person so assessed, and also upon the property so assessed if the possession thereof shall have been transferred, from and after the first Monday of February next succeeding the date of the levy of such taxes," the lien for taxes upon personal property does not attach until the first Monday in February, and, where the possession of such property has been transferred between the levy of the current tax and said date, the purchaser takes such property free of lien from such current tax.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge. Affirmed.

*James Z. Moore,* Prosecuting Attorney (*Miles Poindexter* and *Horace Kimball,* of counsel), for appellant:

It is a well established rule that equitable relief to restrain the collection of taxes will be refused, except in extreme cases, on the ground that to grant it would be an interference with the powers of government leading to

grave and serious consequences, as stopping the collection of the revenue, without which no government can exist. Furthermore, before an injunction will issue, a case must be made out which comes within some of the recognized heads of equitable interference. *Odlin v. Woodruff,* 22 L. R. A. 699, note; *People v. McCreery,* 34 Cal. 432; *Dows v. Chicago,* 11 Wall. 108 (20 L. ed. 65); *Maish v. Arizona,* 164 U. S. 599 (41 L. ed. 567); *Munson v. Minor,* 22 Ill. 595; *Merritt v. Farris,* 22 Ill. 303; *Munson v. Miller,* 66 Ill. 381; *Du Page County v. Jenks,* 65 Ill. 275; *Ogden City v. Armstrong,* 168 U. S. 223 (42 L. ed. 445, and note).

The process for the collection of taxes is a proceeding *in rem,* and is not affected by any change in the ownership or possession of the property. *Hartman v. Bean,* 99 U. S. 393 (25 L. ed. 455); *Osterburg v. Trust Co.,* 93 U. S. 424 (23 L. ed. 964); *Harrington v. Hilliard,* 27 Mich. 271; *Stokes v. State,* 12 Am. Rep. 588; *Bloxham v. Street Ry. Co.,* 29 L. R. A. 507 (51 Am. St. Rep. 44); *Mesker v. Koch,* 76 Ind. 69.

*Danson & Huneke,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This is an equitable action to enjoin the treasurer of Spokane county from selling certain personal property in the hands of the respondent for the satisfaction of personal property taxes levied thereon while the property was in the hands of a former owner. The complaint alleges:

"First. That at all times in this complaint mentioned, M. J. Phelan was and now is doing a general tea, coffee, and spice business at Spokane, Washington, under the firm name and style of Spokane Tea & Coffee Company.

Second. That during the year 1898, and until the sale of said property as hereinafter alleged, one Harry C.

Adams was the owner of a stock of groceries, counters, shelving and fixtures, which said property was situate in Spokane county, state of Washington, and then in possession of said Adams.

Third.    That, to-wit, prior to the 2d day of June, 1898, the assessor of said county, assessed said property as the property of said Adams for said year.

Fourth.    That on the 2d day of June, 1898, said Harry C. Adams was indebted to Boothe-Powell Company of Spokane county, Washington, a corporation organized under the laws of said state, in the sum of $1,912.66, and on said day said Boothe-Powell Company commenced an action against said Harry C. Adams in this court, No. 12,961, for the purpose of recovering judgment against said Adams for said sum, and caused an attachment to issue in said cause against said Adams, and to be levied upon the property hereinbefore described.

Fifth.    That thereafter, to-wit, on June 27, 1898, said Boothe-Powell Company obtained a judgment in said court against said defendant for the sum of $1,921.86, together with $—— costs and disbursements, which said judgment was duly given, rendered and made after due personal service had been made upon said defendant, and said attachment was by said court duly sustained upon the ground that said defendant has assigned, secreted and disposed of his property with the intent to hinder, delay and defraud his creditors, and that said defendant was about to assign, secrete and dispose of his property to hinder, delay and defraud his creditors, and that he was guilty of fraud in contracting the debt and incurring the obligation for which said action was brought.    And said court upon said grounds sustained said judgment, and ordered and directed said property to be sold by the sheriff of said county under said attachment for the purpose of satisfying said claim and judgment against said defendant.

Sixth.    That in pursuance of said order and judgment of said court, and after due notice had been given as by law provided, said sheriff of said county, to-wit, on the —— day of June, 1898, sold all of said property under said attachment and the money derived therefrom was

applied to the satisfaction of said judgment in pursuance of said order of court.

Seventh.   That, thereafter, plaintiff herein purchased a portion of said counters, shelving and fixtures, paying therefor a reasonable and fair value thereof, without notice of any claim of any tax lien thereon, and ever since has been the absolute owner and in possession thereof.

Eighth.   That, to-wit, on the 19th day of June, 1899, said defendant as said treasurer, seized all of said counters, shelving and fixtures which were then in possession of said plaintiff as aforesaid, on account of delinquent personal taxes now claimed to be due said county from said Harry C. Adams, for the year 1898, which were assessed as aforesaid by said county assessor to satisfy the sum of $63.74, $2.40 interest, and $2.15 costs, amounting to the total sum of $68.29, and which is by said treasurer claimed to be due from said Adams for personal taxes as aforesaid, and said treasurer has advertised said property for sale on the 1st day of July, 1899, at 2 o'clock P. M. of said day, and is proceeding and is about to sell said property as aforesaid, and unless prevented from so doing by this court, will wrongfully and without right sell the same as aforesaid.

Ninth.   That the value of the property so seized by said treasurer is the sum of $300, that said property is now in the store of plaintiff, affixed to said building, and used in carrying on plaintiff's said business, and that to take the same or any part thereof, or to remove the same or any part thereof, or to sell the same or any part thereof, will have the effect to ruin and destroy the business of this plaintiff, and deprive him of said property, and thereby cause this plaintiff great and irreparable damage, which cannot be compensated or estimated in money.

Tenth.   That this plaintiff is without remedy at law, and has no remedy except in a court of equity, and that unless said defendant be by this court restrained from taking possession, selling or in any way meddling with said property, this plaintiff will be without remedy and wrongfully deprived of his said property, and will suffer. great and irreparable damage as aforesaid."

Passing some minor technical objections to the form of the complaint, which we think are not meritorious, the appellant's first contention is that the complaint does not state facts sufficient to constitute a cause of action, for the reason that equity will not interfere in such case by injunction, but will leave the party to his rights, if he have any, under the law. Without going into an analysis of the cases on this proposition, we think, under modern authority, the facts stated in the complaint bring it within equitable jurisdiction. Incompleteness and inadequacy of the legal remedy are what determine the right to the equitable remedy of injunction, and we do not think, conceding the allegation of the complaint to be true, that respondent could obtain complete and adequate remedy by law. Nor would any good purpose be subserved by allowing this property to be wrested from the possession of the respondent and relegating him to an action for damages, or by compelling him to pay the taxes as a basis of a suit for damages. This court has passed upon that question in *Andrews v. King County*, 1 Wash. 46 (23 Pac. 409, 22 Am. St. Rep. 136), and *Benn v. Chehalis County*, 11 Wash. 134 (39 Pac. 365). It is true that those cases embraced real estate taxation, but the principle is exactly the same, and the interference with the powers of the government in the collection of its revenue is the same. This point was also raised by the county in its brief in *Mills v. Thurston County*, 16 Wash. 378 (47 Pac. 759); and, while not noticed in the opinion, this court tacitly acknowledged the jurisdiction, by deciding the case upon the merits.

The important proposition in this case, however, and the one it is desirable should be settled, is involved in appellant's second main contention,—that the plaintiff is not entitled to relief in any manner whatever, for the reason

that the taxes sought to be enforced are a lien upon the property levied upon. We cannot agree with the construction placed upon the statute by the appellant, nor do we think that the opinion in the case of *Mills v. Thurston County, supra,* aids it. In that case we simply held that the property would be held for the taxes if transferred after the lien attached, which was provided by statute; and the language of the court to the effect that the revenue statutes "should receive a fair construction to effect the end for which they were intended," was used with reference to sustaining the validity of the lien, and of enforcing it. But no lien other than that provided by statute was under consideration or contemplation. It will not be disputed, we think, that tax levies are purely statutory; and it is for the legislature to determine the time when the lien shall attach, and to settle all questions of public policy of that kind. The general rule is that taxes are not a lien unless expressly made so, and when liens are expressly created, they are not to be enlarged by construction. Cooley, Taxation (2d ed.), 444, and cases cited.

The pertinent question then is, when does the statute impress the lien for taxes upon personal property? Section 1740, Bal. Code, provides that the taxes assessed upon personal property shall be a lien upon all of the real and personal property of the person assessed, and also upon the property so assessed, if the possession thereof shall have been transferred, from and after the first Monday of February next succeeding the date of the levy of such taxes. This statute seems so plain that it is difficult to construe it. Under the rule announced above, excepting for this statute there would be no lien upon the property; there would be nothing but a personal obligation of the original owner after the property had passed from his possession. Both as a matter of public policy, and to aid

in collecting the revenues, the legislature by the enactment above has provided that the taxes shall be a lien upon all of the real and personal property of the person assessed, from the time the taxes are assessed, if the property remains the property of the person assessed; but not so when it is transferred to another person before the first Monday of February next succeeding the levy. Another rule is announced to govern that case, and the lien is made to attach only upon the condition precedent of the transfer having been made subsequent to the time mentioned. Any other construction would render absolutely meaningless the latter and conditional part of the section. It may be that the state and city will occasionally fail to collect taxes, under this construction of the law, but this cannot be avoided. The legislature doubtless concluded that it would be better that this should be so, than that the citizens of the state should be subjected to the perils of a confiscation for taxes of every article that they might purchase between the time the taxes were levied and the time they became due, during which time the payment of taxes is not possible. And it fixed the attachment of the lien at the time the taxes became due, and after that time the purchaser can protect himself by ascertaining whether or not the taxes on the property he is purchasing have been paid.

We think the court placed the proper construction upon the statute, and the judgment is affirmed.

GORDON, C. J., and FULLERTON and REAVIS, JJ., concur.