### CHARLESTON HEIGHTS CO. v. CITY COUNCIL OF CHARLESTON

(136 S. E., 393)

1. MUNICIPAL CORPORATIONS—CITY'S TAX LIEN DATES FROM IMPOSITION OF TAX (ACT DEC. 23, 1878 [16 ST. AT LARGE, P. 725]).—Under Act Dec. 23, 1878 (16 St. at Large, p. 725), giving city council of Charleston power to make taxes imposed by them a lien, such lien dates from the imposition of the tax.

2. MUNICIPAL CORPORATIONS—CONSTITUTION HELD DIRECTION TO GENERAL ASSEMBLY, AND NOT GRANT OF POWER TO CITIES TO ASSESS TAXES (CONST. ART. 8, § 6).—Const. art. 8, § 6, providing "the corporate authorities of cities and towns in the state shall be vested with power to assess and collect taxes," *held* merely a direction to the General Assembly, and not a direct grant of power.

3. MUNICIPAL CORPORATIONS—GRANT OF POWER TO CITY TO ASSESS TAXES HELD NOT IMPLIED GRANT OF LIEN ON PROPERTY (CONST. ART. 8, § 6).—Assuming Const. Art. 8, § 6, is a direct grant of power to cities "to assess and collect taxes," it does not carry with it power by implication a lien on property taxed.

4. TAXATION—TAX IS NOT A LIEN UNLESS EXPRESSLY SO DECLARED.—Taxes imposed are not a lien on property taxed, in absence of statute expressly creating lien.

5. MUNICIPAL CORPORATIONS—CHARLESTON HAS NO LIEN FOR TAXES (CIV. CODE 1912, § 2950, AS AMENDED BY ACT FEB. 20, 1912 [27 ST. AT LARGE, P. 635], ACT MARCH 13, 1919 [31 ST. AT LARGE, P. 148], AND ACT. FEB. 20, 1920 [31 ST. AT LARGE, P. 730]; CIV. CODE 1922, § 4549).—Under Civ. Code 1912, § 2950, as amended by Act Feb. 20, 1912 (27 St. at Large, p. 635), Act March 13, 1919 (31 St. at Large, p. 148), Act Feb. 20, 1920 (31 St. at Large, p. 730), and Civ. Code 1922, § 4549, the city of Charleston has no lien for unpaid taxes paramount over all other liens excepting for state taxes unpaid.

6. STATUTES—AMENDMENT BY RE-ENACTMENT OF PARTICULAR STATUTE WITHOUT REFERENCE TO FORMER AMENDMENT HELD NOT REPEAL THEREOF (CIV. CODE 1912, § 2950, AS AMENDED BY ACT MARCH 13, 1919 [31 ST. AT LARGE, P. 148], AND ACT FEB. 20, 1920 [31 ST. AT LARGE, P. 730]; ACT FEB. 20, 1912 [27 ST. AT LARGE, P. 635]).—The amendment and re-enactment of Civ. Code 1912, § 2950, by Act March 13, 1919 (31 St. at Large, p. 148) and Act Feb. 20, 1920 (31 St. at Large, p. 730), without incorporating therein the provision added by Act Feb. 20, 1912 (27 St. at Large, p. 635), *held* not a repeal of such 1912 amendment.

7. STATUTES—THAT STATUTE, AS AMENDED AND RE-ENACTED, OMITTED PARTICULAR PROVISION AND CERTAIN PRIOR AMENDMENTS HELD NOT IMPLIED REPEAL OF OMITTED PROVISIONS (CIV. CODE 1912, § 2950, AS AMENDED BY ACT FEB. 26, 1920 [31 ST. AT LARGE, P. 801]; ACT MARCH 13, 1919 [31 ST. AT LARGE, P. 148]; ACT FEB. 20, 1920 [31 ST. AT LARGE, P. 730]).—That Civ. Code 1912, § 2950, as amended and re-enacted by Act Feb. 26, 1920 (31 St. at Large, p. 801) omitted the provision of the original act for a penalty of 15 per cent. on delinquent taxes and also omitted the amendment of Act March 13, 1919 (31 St. at Large, p. 148), and Act Feb. 20, 1920 (31 St. at Large, p. 730), relating to towns of York and Clover, held, not an implied repeal of such omitted provisions.

8. MUNICIPAL CORPORATIONS—CHARLESTON HELD NOT ENTITLED TO TAX LIEN IN CONFORMITY TO STATE LIEN, IN VIEW OF ORDINANCE LIMITING DURATION OF LIEN TO 2 YEARS (ACT DEC. 17, 1894 [21 ST. AT LARGE, P. 1103]).—Under Act Dec. 17, 1894 (21 St. at Large, p. 1103), authorizing city's adoption of state legislation with reference to enforcement of taxes, city of Charleston held not entitled to tax lien for 10 years in conformity to lien of state, where ordinance did not adopt statute as relating to lien, but specifically provided that lien should continue for only 2 years.

9. MUNICIPAL CORPORATIONS—LODGMENT OF EXECUTION FOR TAXES WITH SHERRIFF HELD NOT TO GIVE CITY GENERAL LIEN (CODE CIV. PROC. 1922, § 611).—Simple lodgment of executions for taxes due with city sheriff, in due time for collection and sale if necessary, held not to give city a general lien on the property taxed, in the absence of any levy, in view of Code Civ. Proc. 1922, § 611.

10. TAXATION—TAX SALE IS VOID IF PROPERTY WAS NOT LIABLE FOR ALL TAXES FOR WHICH IT WAS SOLD.—A tax sale is void unless the property sold was liable for all of the taxes for which it was sold.

11. TAXATION—CITY'S TAX SALE OF PROPERTY AFTER EXPIRATION OF ITS LIEN HELD VOID, NOTWITHSTANDING IT, ON BEHALF OF STATE, HAD LIEN FOR SCHOOL TAXES.—That city of Charleston for and on behalf of the state had a lien for unpaid and delinquent school taxes on certain property held not to entitle it to tie thereto a lien for its own city taxes, and hence city's tax sale after expiration of its lien was void.

Before SHIPP, J., Charleston, June, 1925. Decree reversed, and cause remanded for judgment in favor of plaintiff.

Suit by the Charleston Heights Company against the City Council of Charleston to set aside a sale for taxes of

certain property.   Decree for defendant, and plaintiff appeals.

*Messrs. Ficken & Erckman,* for appellant, cite: *Ordinary general lien of executions for taxes:* 11 S. C. Stat., 269; 48 S. C. L., 276.  *Lien for taxes created by assessment, not by execution:* 49 S. C. L., 355.  *No lien on property for taxes due City of Charleston for more than statutory period:* 37 S. C. L., 316.  *Taxes no lien without statutory authority:* 67 S. C., 537; 10 S. C., 226; 28 Cyc.; 1704; 37 Cyc., 1138.  *Cases distinguished:* 16 S. C., 32; 6 S. C., 1.  *Poll tax no lien on property:* 67 S. C., 537. *Charleston school taxes:* Civ. Code, 1922, Secs., 2599, 2603 2700, 2703 and 2715.  *State taxes a first lien on property:* Civ. Code, 1922, Sec. 338.  *State taxes presumed paid after ten years:* Civ. Code 1922, Sec. 59.  *Tax laws to be strictly construed:* 263 U. S., 244.  *Authority to assess taxes not authority to sell for taxes:* 37 Cyc., 1281.  *Tax. sale void if property not liable for all taxes for which sold:* 67 S. C., 537; 48 S. C. L., 256; 115 U. S., 1289; 37 Cyc., 1287.  *Provisions of tax law for protection of taxpayen mandatory:* 67 S. C., 526.

*Messrs. Lionel K. Legge,* and *John I. Cosgrove,* for respondent, cite: *Municipalities authorized to assess and collect taxes for corporate purposes:* Civ. Code, 1922, Sec. 4585; Const., 1868, Art. 9, Sec. 8; Const., 1895, Art. 8, Sec. 6.  *Authority to collect taxes implies authority to levy execution:* 6 S. C., 1.  *Assessment of tax creates lien:* 2 Bay., 244.  *City of Charleston authorized to assess taxes:* Charter of City of Charleston.  *State tax a lien on property:* Civ. Code, 1922, Sec. 338.  *State tax presumed paid after ten years:* Civ. Code, 1922, Sec. 529.  *Sale of property proper means of collecting tax:* 66 S. C., 18; 10 S. C., 226; 8 Rich., 214.  *Ordinances of City of Charleston,* Sec. 91.  *Cases distinguished:* 67 S. C., 537; 46 S. E., 343. *Tax a first lien:* 3 Rich., 316; *Ordinances of City of*

*Charleston,* Sec. 103.   *City of Charleston a school district for purposes of taxation:* Civ. Code, 1922, Secs., 1702 and 1703.   *Tax execution creates lien independent of Statute:* 16 S. C., 32; 2 McC., 56; 15 Rich., 353.

December 15, 1926.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action to set aside a sale for taxes, of certain property belonging to the plaintiff, by the City Council of Charleston, in December, 1924.   The ground of the relief sought is that, at the time of the sale, the City Council had no lien upon the property for city taxes; that it never had any lien, but, if any ever existed, its duration had then expired.

The case was tried by his Honor, Judge Shipp, upon an agreed statement of facts.   He filed a decree, dated June 19, 1925, dismissing the complaint.   From that decree the plaintiff has appealed.

It appears that the property in question, Nos. 10 and 12 Hayne street, in the City of Charleston, was owned by the Evelyn Real Estate Company during the years 1920, 1921, and 1922.   The property was duly assessed for city taxes and the same were levied for the years mentioned, by the city authorities.   Not having been paid as required, tax executions were issued therefor and were placed in the hands of the city sheriff for collection, as follows: For the year 1920, on December 5, 1920; for the year 1921, on December 4, 1921; and for the year 1922, on December 27, 1922.   No attempt was made to enforce these executions until the fall of 1924, as will be seen .   On June 20, 1924, the Evelyn Real Estate Company conveyed the premises to the plaintiff, Charleston Heights Company.   In September, 1924, the city proceeded to advertise the property for sale, under the executions for the three several years stated.   The plaintiff protested against the sale upon

the ground that the city's lien for the taxes had then expired. The sale was withdrawn for the time, but in November the property was readvertised for sale under the same executions, and on December 8, 1924, over the formal written protest of the plaintiff, it was sold and bid off by the city, which has threatened to take possession of the property under its tax sale title. On January 9, 1925, the plaintiff instituted this action for the purpose stated above, claiming that the proceedings taken by the city constituted a cloud upon its title.

The plaintiff claims, as stated, that, at the time of the levy and sale under the tax executions, the lien of the City Council, provided for in the Act of 1878, had expired under the express provisions of that Act and the Ordinance of 1881, adopted in pursuance thereof, which limited the duration of the lien to two years from the date of the imposition of the several taxes.

The Act of 1878 (16 St. at Large, p. 725) vests the City Council of Charleston with the power to make any tax thereafter imposed by them, a lien paramount to all other liens except taxes imposed by the State, and that "the said lien shall remain as a paramount lien for the term of two years." The act also provides the manner in which the taxes shall be entered upon the books of the City Council in order that the lien may exist. (No question arises in reference to this portion of the Act; it is referred to only to show that the lien is authorized by the Act, its creation is regulated by the Act, and its duration is fixed.) Manifestly, the inception of the lien is the date of the imposition of the tax, and its limitation is two years from that date.

Pursuant to this Act, the City Council passed an Ordinance in the year 1881, providing for the lien authorized by the Act, and in practically the identical terms fixing specifically the inception and duration of the lien as "for the term of two years from the date of the levy of the tax."

And in the ordinances for the years 1920, 1921, and 1922, levying the city taxes, the duration of the lien was similarly limited to two years.

As will hereinafter be shown, the existence of a lien upon the property taxed is obliged to be referable to some constitutional or statutory provision; it cannot exist without it. If so, it appears to be too clear for argument that, when so provided, the nature of the lien, the property upon which it is fastened, and the duration of the lien are necessarily controlled by the authority providing for the lien. The act of the General Assembly, the ordinance of the city passed in pursuance of it, and the annual ordinances of the city levying taxes, specifically limiting the duration of the lien to two years from the imposition of the taxes, it follows that the lien dies with the expiration of the temporal limitation; and in the case at bar, unless there be some law which relieves the lien from "this body of death," it has passed beyond life and beyond resurrection.

The defendant, conceding the fact of the two-year limitation in the act and in the ordinances, contends that the lien existed at the time of the levy independently thereof, for the following reasons:

(1) That, under the Constitution (Article 8, § 6), municipalities are vested with "power to assess and collect taxes for corporate purposes," which authority carried with it, by implication, a lien upon property subject to the tax.

(2) That, under the Act of December 17, 1894, amending the Charter of the City of Charleston (21 St. at Large. p. 1103), the defendant was authorized to adopt and did adopt "such of the state legislation heretofore enacted or hereafter to be enacted, as they may deem expedient and, as may be applicable, with reference to the enforcement and collection of state and county taxes," giving it a lien for 10 years.

(3) That, under Section 2950, Civil Code 1912, and

amendments, of force when the taxes in question were laid, the City Council had a lien for unpaid taxes, as a paramount lien over all other liens except for state taxes until paid.

(4) That executions were duly issued for said taxes and lodgd with the city sheriff for collection, by sale if necessary, and that the City Council thereby had a general lien upon the property subject to the taxes.

(5) That, under the Statutes of this State, the defendant, for and on behalf of the State, held a lien for unpaid and delinquent school taxes for the years in question, coupled with which lien was that of the defendant for taxes for general corporate purposes.

(6) That when the Evelyn Real Estate Company conveyed the property in question to the plaintiff, the former was insolvent and that, under Section 103 of the Revised Ordinances of the City of Charleston, the lien of the defendant for unpaid taxes was a paramount lien upon the property.

(7) That the plaintiff is merely a holding company for the mortgagee whose mortgage was satisfied by the conveyance mentioned, that the mortgage gave the mortgagee the privilege of paying the taxes upon the property which it did not avail itself of, and that said mortgagee and the plaintiff, its holding company, are estopped now from asserting any invalidity in said taxes or executions or lien.

In his decree, his Honor, Judge Shipp, based his conclusion solely upon the ground that the lien of the City Council for the taxes existed as a general lien, by virtue of the issuance and lodgment of the tax executions with the city sheriff for collection by levy and sale, if necessary. He declared:

"It is my opinion, therefore, that the executions for the unpaid taxes in question carried their own general lien, commencing at the time of the filing of the executions in the office of the city sheriff, and of force and effect as a lien

on the property affected by the taxes superior and prior to all subsequent incumbrances, transfers, and liens, but secondary to all existing and superior incumbrances. It follows, therefore, that the City of Charleston, upon lodgment of these executions in the city sheriff's office, had a general lien on the property affected by the executions, which carried with it the right to sell its equity in the property levied on in the hands of the owner or purchaser thereof. It naturally follows that, under the general lien of the executions themselves, even in the absence of a paramount statutory lien, the city had a right to sell the property of plaintiff to satisfy such general liens."

—declining to pass upon the other grounds taken by the defendant to sustain the sale.

The respondent, however, by proper notice of motion to sustain the decree, has presented the additional grounds:

(1) That the City Council had a paramount lien for the taxes in question on plaintiff's property for a period of 10 years, in addition to the general lien created by the lodgment of the executions with the sheriff, as held by his Honor, Judge Shipp.

(2) That, under the Act of 1894, the City Council was authorized to adopt and did adopt the state legislation upon the subject, and thereby acquired a lien for city taxes for the same duration as that of the State for its taxes.

(3) That, as the State had a lien for school taxes, the City Council, for and on behalf of the State, had such a lien and had the right to tie such lien, a lien of its own for city taxes.

So that the questions to be determined by this appeal arise of the several contentions based upon the conclusion of his Honor, Judge Shipp, and the sustaining grounds of the respondent.

The first contention of the defendant is that under the Constitution (Article 8, § 6), municipalities are vested with "power to assess and collect taxes

for corporate purposes," and that this authority carried with it by implication a lien upon the property subject to the tax.

It may be noticed in the first place that the Constitution does not directly confer this authority upon municipalities. The language is:

"The corporate authorities of cities and towns in this State shall be vested with power to assess and collect taxes for corporate purposes,"

—manifestly a direction to the General Assembly, and not a direct and immediate conferring of the power. But assuming that it be such direct and immediate conferring of the power, the power conferring is "to assess and collect taxes," which power manifestly may exist in the absence of a lien upon the property assessed for taxation; and if so, clearly, the lien cannot be said to exist by implication from the power conferred.

We have found but one discordant note to the proposition that the existence of the lien is entirely a matter of statutory creation; and that is the case of *Butler v. Bailey,* 2 Bay., 244, in which the Court says:

"That from these principles, it was clearly deducible, that the payment of taxes, * * * must of necessity be a paramount obligation, and of course take place of all private contracts between citizen and citizen, of what nature or kind soever they might be. That so high was this obligation to the public, that it might well be compared to a mortgage, *pro tanto,* which created a lien on every man's real and personal estate, for his share of the public taxes, according to the rules of appointment which the law had established."

But we find in the case of *State v. Guerry,* 15 Rich., 353, this statement by the Court:

"The priority which, according to the case of *Butler v. Bailey* (2 Bay., 244), the necessities of government re-

quire, the case of *Harth v. Gibbs* (3 Rich., 316), the Act of 1843 (11 St. at Large, p. 248), and the ordinance of 1844, show must be sustained by legislative enactments, that is in respect to city taxes by an ordinance of council."

In the case of *Harth v. Gibbes* (Rich., 316), referred to in *State v. Guerry,* which also considered the case of *Butler v. Bailey,* the Court said:

"It plainly shows that it was not supposed that taxes had any specific lien on the property itself; and until the Act creates one none exists. * * * Unless some lien had been created by the act on the property in the hands of the vendee, that he can in no shape be made liable for their payment."

And in *Dickson v. Burckmyer,* 67 S. C., 526; 46 S. E., 343, the Court declared:

"Taxes cannot, however, be held to constitute a lien on property without statutory authority."

This is, so far as our investigation has shown, the universal rule.

In Blackwell, Tax Titles (4th Ed.) 516, it is said:

"By what power and authority does a public officer assume to seize and sell my land, after my neglect or refusal to discharge the taxes upon it? To this we answer, he acts exclusively under statutory authority. The officer is a stranger to the title; he sells that which he does not own; and he can have no right to make any such sale except in so far as he is constituted the agent of the law for that purpose. The power to assess and levy taxes, and to demand payment, does not carry with it the right to make sale of lands for the purpose of collection, but that right must be expressly given by Statute."

"Municipal taxes are liens upon the property upon which they are assessed only where they are expressly made so by Statute of Charter provision, or by act of the municipality pursuant to authority delegated by the

Legislature. * * * The lien usually attaches at the time when the assessment roll and the warrants for collection come into the hands of the receiver or collector of taxes. The duration of the lien is generally fixed by Statutes or Charter provisions at a certain number of years."    28 Cyc., 1704.

"It is undoubtedly a sound proposition that taxes, whether general or special, are not liens upon the property against which they are assessed, unless made so by the Charter, or unless the corporation is authorized by the Legislature to declare them to be liens.   The Statute determines not only the existence of the lien, but also the property which is subject to it, the duration of the lien, and its priority with reference to other liens and claims against the property."    4 Dillon M. C. (5th Ed.), § 1420.

"But in many states the lien is specifically limited to one or more years from its inception, and after the expiration of this period, it is generally held that the taxes become a mere personal charge or claim against the taxpayer."    37 Cyc., 1147.

In Cooley, Taxation, 470, it is said:

"The power which the State confers to assess and levy taxes, does not of itself include a power to sell lands, in enforcing collection, but the power to sell must be expressly given."

"It is conceded in this State that taxes become liens on property solely from express legislation, and can be collected only in the manner provided by Statute."    *State v. O'Neil*, 55 N. J., Law, 58; 25 A., 273.

"Taxes become liens by virtue of Statute only, and, when created, the lien is not to be enlarged by judicial construction."    *Bibbins v. Clark*, 90 Iowa, 230; 57 N. W., 884; 29 L. R. A., 278.

"There. is no lien on real estate for taxes, except by force of Statute, and a Statute creating such lien must be

strictly construed.   Such statutory lien cannot be enlarged by construction." *Miller v. Anderson,* 1 S. D., 539; 47 N. W., 957; 11 L. R. A., 317.

"A tax is not a lien unless it is expressly made so by the law or ordinance which imposed it." Note, 11 L. R. A., 371.

"The lien on real estate has no existence unless specially created by Statute, and such Statute must be strictly construed." *Idem.* (citing *Creighton v. Manson,* 27 Cal., 613. *Philadelphia v. Greble,* 38 Pa., 399. Allegheny City Appeal, 41 Pa., 60).

"Nor are they different when levied under writs of mandamus for the payment of judgments, and when levied for the same purpose by Statute. The levy in the one case is as much by legislative authority as in the other. * * * In neither case are the taxes liens upon property unless made so by Statute." *Meriwether v. Garrett,* 102 U. S., 472; 26 L. Ed., 197.

"The taxes to be levied did not constitute a lien unless so made by Statute." *Larson v. Hamilton,* 123 Iowa, 485; 99 N. W., 133.

"Such a lien does not arise by implication from the power to tax. It owes its inception, continued existence, and duration to the Statute." *State v. Bellin,* 79 Minn., 131; 81 N. W., 763.

"Such a lien must be created by Statute, or it does not exist." *Castle v. Anderson,* 69 Iowa, 428; 29 N. W., 400.

"It is a general principle appertaining to the law of taxation that taxes are not a lien upon the property of the taxpayer unless a lien is expressly created or provided for by Statute." *Jaffray v. Anderson,* 66 Iowa, 718; 24 N. W., 527.

"In the absence of Statute there is no lien on real estate for taxes, and the taxes are primarily a charge on the owner." *Dunham v. Lowell,* 200 Mass., 468; 86 N. E., 951.

"The general rule is that taxes are not a lien unless expressly made so, and when liens are expressly created they are not to be enlarged by construction." *Phelan v. Smith,* 22 Wash., 397; 61 P., 31.

"Taxes are not a lien, unless expressly made so by Statute." *O'Connell v. Sanford,* 256 Ill., 62 99 N. E., 885.

"No liens for general taxes or special assessments exist by virtue of the common law. Such liens are purely of statutory origin, and we must look to the Statute for the time of their commencement and their duration." *Knowles v. Temple,* 49 Wash., 595; 96 P., 1.

In *Heine v. Levee Com.,* 19 Wall. 655; 22 L. Ed., 223, it is held, quoting syllabus:

"Taxes are not liens unless declared so by the Legislature under whose authority they are assessed."

"It is well settled that a tax is not a lien unless it is expressly made so by the law or ordinance which imposes it." *Tompkins v. Ry.* (C. C.), 18 F., 344.

"Taxes are not liens on the property on which they are assessed, unless expressly made so by Statute." *Quimby v. Wood,* 19 R. I., 571; 35 A., 149.

2. The second contention of the defendant is that, under Section 2950, Civil Code 1912, and the amendments thereto, of force when the taxes in question were laid, the City Council had a lien for unpaid taxes, as a paramount lien over all other liens except for State taxes, until paid.

Section 2950, Civil Code 1912, taken in connection with the amendments of 1912, 1919, and 1920, and the Code of 1922, § 4549, is in great confusion.

That Section, as it appears in the Code of 1912, provides: (1) Authority in cities containing over 5,000 inhabitants to impose a tax not exceeding 1¼ per cent. (2) Authority in towns containing between 1,000 and 5,000

inhabitants to impose a tax not exceeding 1 per cent. (3) Authority in both to impose a penalty of 15 per cent. upon delinquents. (4). That the taxes so levied and the penalty shall constitute a lien upon the property upon which they are levied, until paid. (5) The same power of enforcement against the property of defaulters as is provided by law for the collection of state and county taxes (6) The issuance of tax execution in a manner prescribed. (7) Fees and costs.

On February 20, 1912 (27 Stat. 635), Section 2950 was amended by authorizing the City Council, in addition to the tax authorized by that Section, to levy an annual tax to pay interest on bonds and to accumulate a sinking fund. The Act re-enacts the Section as thus amended.

On March 13, 1919, (31 Stat. 148), the Section was further amended by providing for an annual tax in the town of York not exceeding 2 per cent. The Act re-enacts the Section thus amended, but omits the amendments of 1912, relating to interest and sinking fund As the Act in its title, however, relates only to the town of York and does not purport to repeal the amendment omitted (of 1912); that amendment continued of force, notwithstanding the omission.

On February 20, 1920 (31 Stat. 730), the Section was further amended by providing for an annual tax in the town of Clover not exceeding 2 per cent. The Act re-enacts the Section thus amended, but omits the amendment of 1912, relating to interest and sinking fund. As the Act in its title, however, relates only to the town of Clover and does not purport to repeal the amendment omitted (of 1912), that amendment continued of force, notwithstanding the omission.

On February 26, 1920 (31 Stat. 801, the Section was further amended by striking out the words:

"Said council shall have the power to impose by ordinance,

published at least 20 days, an annual tax not exceeding $1\frac{1}{4}$ per cent. in cities containing over 5,000 inhabitants, and not over 1 per cent. in towns containing between 1,000 and 5,000 inhabitants,"

—and inserting in lieu thereof the following:

"The town council of all towns and cities containing over one thousand and up to five thousand inhabitants shall have power to impose by ordinance published at least twenty days an annual tax in such amount as in the discretion of the said town council may be necessary for corporate purposes, not exceeding, however, two (2) per cent." [The effect of which was to withdraw all power given in the Section to cities of over 5,000 inhabitants, and to increase the permitted levy by towns containing over 1,000 and up to 5,000 inhabitants, from 1 to 2 per cent.]

The Section was re-enacted as thus amended, but omitted the provisions in the original Section for the penalty of 15 per cent. and also omitted the amendments, relating to the towns of York and Clover, but included the amendment of 1912, relating to interest and sinking fund. As the Act, neither in its title nor body, purports to repeal the omitted amendments or the 15 per cent. penalty provided for in the original Section, these provisions continued of force, notwithstanding the omissions. As the Act, however, withdrew from cities containing over 5,000 inhabitants all power contained in the original Section, including the provision for a lien upon the property subject to the taxes, that lien expired with the passage of the Act of February 26, 1920 (31 Stat. 801).

On March 11, 1920 (31 Stat. 867), the Section was further amended by providing for a levy of 12 mills by the town of Blackville. The Section was re-enacted as thus amended, but the Act omitted the amendment of 1912, relating to interest and sinking fund (27 Stat. 635), the amendments relating to the towns of York and Clover,

and the amendment last considered (31 Stat. 801). As the Act, however, relates in its title only to the town of Blackville, the foregoing amendments were not affected by the omissions.

Then, to cap the climax of incongruities, Section 4549 of the Code of 1922 re-enacts the Act of 1920 (31 Stat. 801) just as it was passed, which, as stated, omits the provision in Section 2950, Code of 1912, for the penalty of 15 per cent., both amendments relating to York and Clover. The Section of the Code of 1922 referred to omits the amendment relating to Blackville, but includes the amendment of 1912 relating to interest and sinking fund.

As the Code contains all of the general Statute Law of the State, it follows that Section 4549, Code of 1922, has the effect of repealing so much of Section 2950, Code 1912, as confers powers upon cities of more than 5,000 inhabitants, and repeals the provision for 15 per cent. penalty and the amendments relating to York, Clover, and Blackville. With the repeal goes, of course, the lien provided for in Section 2950, in favor of cities of more than 5,000 inhabitants. This result applies of course, only to taxes levied between the date of the adoption of the Code and the passage of the Act of 1924 (33 Stat. 958), which by amendment to Section 4549 restores the lien for taxes levied by cities and towns of 1,000 population and over.

3. The third contention of the defendant is that, under the Act of December 17, 1894, amending the Charter of the City of Charleston, the defendant was authorized to adopt, and did adopt "such of the State legislation heretofore enacted * * * as they may deem expedient and as may be applicable, with reference to the enforcement and collection of state and county taxes;" that by its adoption of the Statute giving the State a lien for state and county taxes, it became entitled to the same lien for city taxes; and that as by the Statute of 1887 (19 St. at Large,

p. 862), as amended, the State has a lien for 10 years, the city has the same.

It is a sufficient answer to this contention to say that the City Council has not adopted the same by any ordinance so far as the lien for taxes is concerned. On the contrary, the ordinance specifically provides that the duration of the lien should be for only 2 years. Section 103 of the ordinaces does not avail for the reason that it makes no provision for the duration of the lien, and therefore must be construed in connection with the ordiance fixing the duration of 2 years.

4. The fourth contention of the defendant is that executions for the taxes due in 1920, 1921, and 1922 were lodged with the city sheriff in due time, for collection and sale, if necessary, and that they constituted liens upon the property subject to the taxes.

It does not appear that the executions were attempted to be levied upon the property which had been conveyed to the plaintiff on June 20, 1924, until some time in September, 1924, if then. All that appears to have been done is that the advertisement of the sale was begun at that time. The proposition contended for by the defendant and sustained by his Honor, Judge Shipp, is that the simple lodgment of the executions in December, 1920, 1921, and 1922 created liens from the date of their lodgment, and that when the plaintiff received title in June, 1924, the conveyance was subject to the execution liens. If the executions had been levied prior to the conveyance to the plaintiff, there would have been some ground for the contention that they then acquired a superior lien, though we are not to be understood as so deciding. We have concluded above that the taxes were not a lien at the time of the conveyance, and it would seem illogical to hold that the simple lodgment of the executions had that effect, in the absence of a Statute so providing.

Assuming what is by no means clear, that an execution for taxes partakes of all of the incidents of an ordinary execution for debt, we know of no authority, statutory or otherwise, which gives to the lodgment of an execution any lien upon the execution debtor's property, real or personal, before a levy. The theory of the Code is that the lien upon real estate is created by the judgment, the execution being simply the means provided for enforcing the judgment; and, even when levied upon real property, it appears superfluous to hold that a lien is thereby created when the lien of the judgment is sufficient for all purposes. Of course, when levied upon personal property, the execution becomes a lien for the reason that a judgment is not a lien upon that species of property. Code (Civ. Proc. 1922, § 611) provides for the lien of an execution upon personal property, as of the date of the levy; it makes no provision for a lien upon real estate; and in *Kohn v. Meyer,* 19 S. C., 190, it is specifically held that, under the Code, an execution has no lien upon either kind of property until levy.

In 23 C. J., 490, it is said:

"Where the judgment is a lien upon real estate, it has generally been recognized by the Courts that an execution and levy thereunder upon such real estate creates no new or separate lien from the lien of the judgment, and does not even extend the lien of the judgment, except by virtue of a Statute to that effect."

Assimilating a tax execution to the ordinary execution, the assessment of taxes represents the judgment; if there be no lien provided for the taxes, there can be no judgment lien, and if not, there can be no execution lien; certainly, not before its levy.

"It is generally held, in the absence of Statute to the contrary, that an execution is not a lien upon real estate in-

dependent of the judgment lien, without a levy." 23 C.
J., 492.

See, also, *State v. Guerry,* 15 Rich., 353, where it is
held:

"The specific lien for taxes given by the Act of 1843,
and the city ordinance of March, 1844, lasts for one year
only, and lodgment of execution within the year does not
extend the lien. Such execution has its own lien, but that
is a lien subject to prior incumbrances."

5. The fifth contention of the defendant is that,
under the Statutes of this State, the defendant, for
and on behalf of the State, had a lien for unpaid
and delinquent school taxes for the years in questions,
coupled with which lien was that of the defendant for
taxes for general corporate purposes.

Assuming that the City Council has the same rights as
to school taxes as are conferred upon the State, the law
seems plain that a tax sale is void unless the property
seized was liable for all of the taxes for which it was sold;
and, unquestionably, as there was no lien for the city taxes
proper, the sale must be declared void.

"The decisions generally recognize the following funda-
mental rules: That a tax sale is invalid for every purpose
unless the property was at the time liable for all the taxes
for which it was sold. * * * 37 Cyc., 1287.

In *Gage v. Pumpelly,* 115 U. S., 454; 6 S. Ct., 136;
29 L. Ed., 449, it is held:

"Under the laws of that State [Illinois], as construed
by its Courts, if any portion of a tax assessed upon real
estate, and levied and collected by sale of the property,
is illegal, the sale and the tax deed are void." *Riverside
Co. v. Howell,* 113 Ill., 259. *McLaughlin v. Thompson,*
55 Ill., 249. *Kemper v. McClelland,* 19 Ohio, 308. *Gamble
v. Witty,* 55 Miss., 26. Cooley, Taxation, 295, 296.
*Hardenburg v. Kidd,* 10 Cal., 402.

"A sale of land for taxes is not valid unless the land was liable for all the taxes for which it was sold." *Bucknall v. Story,* 36 Cal., 67.

See cases cited in 45 Cent Dig. Taxation, § 1277, in 18 Dec. Dig. Taxation, 622, and in Second Dec. Dig. Taxation, 622.

We think, therefore, that the sale was void and should have been so declared.

The judgment of this Court is that the decree of the Circuit Judge be reversed, and that the case be remanded to the Circuit Court for judgment ·in favor of the plaintiff.

MESSRS. JUSTICES WATTS, BLEASE and STABLER and MR. ACTING ASSOCIATE JUSTICE PURDY concur.