## Mix *against* Ackla,

A testator devised a tract of land, incumbered by a judgment, to his son, subject to the maintenance of his widow ; upon a sale of the land by the sheriff, upon an execution against the son, *held* that the proceeds should be applied to the judgments against the son, and that the purchaser should hold the land incumbered by the judgment against the testator and subject to the widow's maintenance.

APPEAL from the decree of the court of common pleas of *Bradford* county, appropriating the proceeds of the sale of the real estate of William Ackla.

In 1835, Benjamin Ackla, seised in fee, but indebted by judgment, devised his land in severalty to his four sons.   To one of them he devised thus : "to my son William Ackla and his heirs, I give and bequeath all the residue and remainder of my farm not heretofore disposed of, subject however to the maintenance of my beloved wife Hannah Ackla during her natural life, or to my said wife's dower should she prefer it to her maintenance."   M. Hollenback had obtained a judgment against the devisor at February term 1833 ; and subsequently to his death Hiram Mix had obtained judgment against William, the devisee, at December term 1836, on which the land was sold to Edward Overton, Hollenback's attorney ; and the money being in court was applied to Hollenback's judgment. It did not appear that there were other incumbrances.   From this decree there was an appeal by Octavius A. Holden who was the actual owner of Mix's judgment.

The cause was argued in this court by

*Octavius A. Holden*, the appellant, *in propria persona;* who cited, 1 *Dall.* 501 ; and by

*Ellwell* and *Overton*, for the appellee, who cited, 14 *Serg. & Rawle* 257 ; 2 *Penn. Rep.* 477.

The opinion of the Court was delivered by

GIBSON, C. J.—The question is, what did the sheriff's vendee purchase ?   If only the estate of the son, then the son's creditor is entitled to the proceeds of it, and the father's creditor may still have recourse to the land.   It is important that it was sold expressly subject to the widow's incumbrance.   According to Fisher *v.* Kean, 1 *Watts* 259, it could not have been sold discharged of it, nor consequently of an incumbrance still earlier.   In a case like this, where an estate cannot be sold entirely disincumbered on a younger judg-

[Mix v. Ackla.]

ment, there are but two ways to proceed: either to sell the whole on the lien which binds the whole; or to sell the contingent interest by itself on the lien which binds it only as a contingent interest, leaving a reserved fund for the prior liens to pass with the land into the hands of the purchaser. By the first, which is the more beneficial one as it enables the purchaser safely to bid an outside price, the purchase money is applied to the incumbrances in their order; by the second, which is less productive as the purchaser bids at a risk which requires him to keep the price decisively within the value, the purchase money is consecutively applied to the liens posterior to the incumbrance which could not be divested. This is a case in which a disincumbered title could not be sold on the younger judgment because the widow's paramount incumbrance could not be divested by it; nor consequently could the estate be sold on it for a full price. What, then, would be the effect of applying the proceeds of the actual sale to the elder judgment? Should they fall short of actual satisfaction, the creditor, though entitled to the clear benefit of the whole estate, would be postponed to the widow who is an incumbrancer paravail; for, I take it, he could neither sell the land over again and get the avails a second time, nor sell the widow's interest by itself. Even an inchoate right of dower was held, in Riddlesberger *v.* Mentzer (*ante* 141), not to be a subject of separate execution. But why should he be allowed to strip the younger creditor of the price of his contingent interest? He who alone can turn the entire interest into cash for the benefit of all, refuses to do so, nor can the younger creditor compel him; what course, then, is left to the latter but to sell the resulting or contingent interest for what it will fetch? It may be worthless; but a purchaser may be found to give something for it, and of that chance the younger creditor ought not to be deprived. Yet he would be deprived of it, had the senior creditor a preferable right to the proceeds. It would enable him to exact the purchase money even from the junior creditor himself, having bought in the resulting interest at a risk to protect his lien. Such a right could result but from an actual sale of the whole estate for purposes of general distribution; but as the younger creditor is incompetent to that, he must be allowed to sell his peculiar interest for himself. Were he permitted to sell free from all but the widow's incumbrance, he might interfere with the right of him who is entitled to sell so as to divest it. On the other hand, to allow that creditor to treat the transaction as a sale of the contingent interest by suffering the proceeds to go into the junior creditor's hands, or to treat it as a sale of the whole by taking them to himself, would cast a ruinous obscurity over the biddings; for the purchaser, uncertain whether he were bidding for the entire interest or a contingency, would keep the price within the limits of certain protection in either event. Thus, to satisfy the elder judgment out of the purchase money, would put just so much into the purchaser's pocket, at the younger creditor's expense. But to authorize a sale of his contingent interest

for himself, will inform the purchaser exactly what he buys, the elder creditor's fund will be reserved for him, the widow's maintenance will be protected, and the younger creditor will have his remedy ; so that the property will fetch a full price, the rights of the parties be fixed, and complete justice done to all.

Decree of the court below reversed, and the proceeds of the sale ordered to be applied to Mix's judgment.