## Tower's Appropriation.

" To my nephew T, I give and bequeath all my estate, real and personal, he paying the legacies hereinafter mentioned :" *Held*, to create a charge upon the land devised ; and upon a sale of it by the sheriff as the property of the devisee, the legacies are payable out of the proceeds.

Land may be sold subject to a mortgage, although it be not the first incumbrance, if it be so understood and agreed to by the purchaser at the time of sale.

APPEAL from the decree of the Court of Common Pleas of *Juniata* county, appropriating the proceeds of the sale of the real estate of Jeremiah Tower. The proceeds of the sale by the sheriff, $2500, were brought into court and claimed, first, by Jane Tower, the amount of legacy bequeathed to her by the will of Charles Tower, deceased, under which Jeremiah Tower derived his title : the terms of the will were as follows : — " To my nephew, Jeremiah Tower, I give and bequeath all my estate, real and personal, he paying the legacies hereinafter mentioned :" then followed a legacy of $700 to his sister, Jane Tower, the amount of which, with interest, was claimed.

The next claim was by the trustees of the Tuscarora Academy, upon a mortgage to secure the payment of $1500, executed by the said Jeremiah Tower to them. On the subject of this claim it was contended by the subsequent judgment creditors that the land was sold subject to the mortgage, and much testimony was taken and read on this subject, the substance of which is contained in the deposition of Jacob A. Christy, as follows : —

" I was present at the time of the sale of the real estate of Jeremiah Tower by the sheriff. Some time after the biddings commenced, sheriff Wilson, who was standing not far from where I was, bid $3000. I mentioned to him that there was a mortgage on the property ; he made some inquiry with regard to the fact of me and others present, and when he ascertained that such was the fact, he withdrew his bid, and said he would not stand to it, for the reason that there was a mortgage on it. If my recollection serves me, the crier then proclaimed that it was selling subject to a $1500 mortgage : previous to that Captain Aitken had bid $2500, and said he would stand to his bid, and got it at that price, there being no other bid after it was ascertained there was a mortgage on it."

Two questions arose in this court ; first, whether the legacy was a lien upon the land, and payable out of the proceeds of the sale ; and, second, whether the facts and circumstances proved to have occurred at the time of the sale, gave to the purchaser a title

clear of the incumbrance of the mortgage, or whether he took it subject to it.

The court below (HEPBURN, President) ruled that the legacy was charged upon the land, and payable out of the money in court; and that the purchaser took the land charged with the incumbrance of the mortgage, and therefore rejected the claim of the mortgagee.

*Benedict*, for appellants, argued that the legacy was not a lien upon the land, and cited 8 *Watts* 198; 3 *Watts & Serg.* 370; 4 *Watts & Serg.* 423; 5 *Watts* 272; 7 *Watts* 316; 2 *Penn. Rep.* 277; 16 *Serg. & Rawle* 162; 2 *Rawle* 166.

*Parker*, contra, cited 1 *Penn. Rep.* 96, 112; 4 *Rawle* 440; 4 *Watts* 396; 1 *Watts & Serg.* 235; 8 *Watts* 48; 2 *Penn. Rep.* 340; 6 *Watts* 140; 6 *Watts & Serg.* 281; 7 *Watts* 416.

The opinion of the Court was delivered by

GIBSON, C. J. — To distinguish this case from *Mix* v. *Ackla*, (7 *Watts* 316,) it is necessary to state the principle of that case more clearly than was done in delivering the opinion of the Court. But to do so, it is necessary to premise that it had been settled, in the *Presbyterian Congregation* v. *Wallace*, (3 *Rawle* 109,) that a lien creditor cannot claim both under the sheriff's sale and paramount to it; nor take the proceeds or the land at his election. To speak more plainly, he shall not take the proceeds of a judicial sale in part, and sell the land over again for the residue; or take satisfaction of the whole out of the proceeds or the land at his option. It results that the land is sold either discharged of his lien or subject to it. If discharged, he comes into court for his money, or loses it: if subject, his recourse is to the land in the hands of the sheriff's vendee, and to nothing else. Now, a paramount execution creditor sells clear of all incumbrances; and he takes the proceeds entire, if so much be necessary to satisfy his debt. His sale turns the whole estate into money; and of the benefit of all its productive capacity he is not to be deprived by the sale of a junior judgment creditor who is prevented, by the intervention of a lien which his execution cannot discharge, from likewise turning the whole into money for the benefit of all in their order. If, then, a junior creditor is compelled to leave a particular incumbrance standing on the land, he is necessarily compelled to leave standing any other incumbrance which precedes it; and on a judgment subsequent to a fixed lien, the sheriff consequently sells the estate subject to incumbrances which the proceeds might not satisfy, nor the sale dissolve: in other words, a judgment creditor shall not turn the land into money, where he cannot do it as beneficially for a paramount incumbrancer as that incumbrancer could do it for himself; and he consequently can sell no more than his

[Tower's Appropriation.]

own contingent or resulting interest. Now, in *Mix* v. *Ackla,* there was, first, a judgment against the ancestor which was entitled, should need be, to the unincumbered value of the whole estate; next an indefinite incumbrance on the land in the hands of the ancestor's devisee for the maintenance of the widow, which could not be taken out of the purchase money; and last, a judgment against the devisee, on which the land was sold, and consequently subject to the judgment against the ancestor, which would otherwise have been postponed to a subsequent incumbrance, and might have failed of effect had it been thrown on the price of the land, sold, as it was, subject to an intermediate incumbrance. To prevent the possibility of such an occurrence, we held that a younger judgment creditor, in that predicament, sells subject to the preceding liens, and comes in with the other subsequent lien creditors, according to order of priority.

It will be perceived that the case before us is different in an essential particular. As the preceding mortgage was not the first incumbrance, and was consequently not guarded by the statute of 1830, the subsequent creditor had power to sell clear of it; but did not. It is argued that he was, notwithstanding, bound to sell according to the terms of the levy which was not subject to the mortgage; but the contrary was held in *Stakpole* v. *Glassford,* (16 *Serg. & Rawle* 163,) where neither the levy, the return of sale, nor the deed was subject to the mortgage; yet it was ruled that the purchaser was bound by his agreement to take subject to it, proved before the jury as a matter of fact. And that there is neither discrepance nor contradiction between the levy and such proof is evident from the consideration that the whole is, in effect, sold as well as levied, a part of the price sufficient to answer the mortgage debt being left on the land. In the case at bar, the land was at first offered as unincumbered, but eventually sold expressly subject to the mortgage which was discovered in the course of the biddings, and consequently to nothing else. Had it produced less than enough to satisfy the legacy, the legatee might have had the sale set aside; but the execution creditor cannot complain that she has acquiesced in it, and come into court for her money on his own terms. In fact, the same result has been produced by selling subject to the mortgage that would have been produced by selling free from it, except that the mortgage money, instead of being in court, is in the land; and whatever remains after payment of the legacy is distributable among the judgment creditors, just as if the mortgage money had been paid into court in the first instance, and taken out by the mortgagee.

The only room for doubt is, whether the legacy is actually charged on the land. An intent to charge has been implied by the English courts from a devise of the residue, real and personal, after payment of legacies; whence a supposed design that the devisee should have nothing till the legacies were first taken out of

[Tower's Appropriation.]

the land.   We went a step further, in *M'Lanahan* v. *M'Lanahan*, (1 *P. R.* 9,) where we inferred a design to charge a particular legacy, from a blending of the real and personal estates in a devise not of the residue, particular parts of the estate being excepted; and this, too, though other legacies were expressly charged.   That case has become a rule of property, and it is, therefore, not to be shaken.   Nor ought there to be a desire to shake it.   That the devisee of a residue is to have nothing till the legacies are paid, is certainly a legal inference; but it would seem to follow as naturally from any devise that confounds the land with the personal estate, which is the natural fund.   Nor is such an inference destitute of support from authority; for legacies were declared to be payable out of the land in *Muddle* v. *Fry*, (6 *Madd.* 270,) where there was no residue, and the will contained no devise or mention of the land at all, except under the words " worldly estate."   There is certainly no substantive difference, in respect to the actual meaning, between a devise, like the present, of all the testator's real and personal estate, the devisee " paying the several legacies hereinafter mentioned," and a devise of the residue, the legacies being first paid.   In practice they are usually accidental forms of saying the same thing, which imply a difference of time rather than of meaning; and which have often borne hard on daughters and younger sons, contrary to the testator's actual intention.   To say, in a case like the present, where money is given in lieu of land merely for the convenience of partition, that there is no more than a personal charge, would be fraught with injustice.   The common law charges owelty of partition on the land for which it is substituted, in the shape of a rent; and in a vast majority of cases the testator intends to make the land a security for the equivalent given for it, and we are bound to give effect to his intention where we may do so without violating an established principle.   In this instance we are at liberty to say that the legacy was charged on the land.

                                                Decree affirmed.