## Federal Land Bank of Baltimore v. Dimon et al.

*A. N. Crandall,* for exceptants.
*Elliott & Elliott,* contra.

LEWIS, P. J., July 9, 1935.—Under date of May 23, 1929, Truman Dimon and Gladys S. Dimon, his wife, executed a mortgage to The Federal Land Bank of Baltimore upon a tract of seated land in Potter County. The mortgage was duly recorded on June 28, 1929. Thereafter certain taxes for the years 1931 and 1932 were levied upon the mortgaged premises. The 1931 taxes, being unpaid, were by the tax collector returned to the county commissioners and entered by them in the tax return docket on May 2, 1932. The 1932 taxes were so returned and entered on May 1, 1933.

The mortgaged premises were sold by the county treasurer at tax sale for the 1931 taxes on March 1, 1934, to W. C. and B. E. Simmons for the sum of $109.11, and for the 1932 taxes on March 1, 1935, to Hugh B. Strang for $110.79.

Thereafter on March 14, 1935, the mortgagee, having issued a sci. fa. sur mortgage on January 29, 1935, caused judgment to be entered against the mortgagors in the sum of $2590.50. Levari facias issued, and on April 15, 1935, the sheriff sold the mortgaged premises to the mortgagee for $2300. The sheriff's distribution, posted on April 16, 1935, did not include an award to W. C. and B. E. Simmons nor to Hugh B. Strang. Exceptions to the distribution were duly filed alleging the schedule of distribution to be in error: (1) By not including an award to W. C. and B. E. Simmons for $109.11 plus a 25 percent redemption fee of $27.28, and (2) By not including an award to Hugh B. Strang for the sum of $110.79 plus a 25 percent redemption fee of $27.70. The mortgagor intervened to answer and defend the exceptions.

The lien of the mortgage was preserved by the Act of April 30, 1929, P. L. 874, sec. 1, 21 PS §651, unless the sale was for "taxes, municipal claims and assessments whose lien though afterwards accruing has by law priority given it".

The tax sale was had under authority of the Act of May 29, 1931, P. L. 280, 72 PS §§5971a et seq. The Act of 1931 was amended, as to sections 4 and 5, by the Act of May 22, 1933, P. L. 940, 72 PS §§5971d and 5971e.

By section 9 of the Act of 1931, 72 PS §5971i, it is provided:

"No such sale shall discharge the lien of any mortgage which shall have been recorded before such taxes became liens by return and docketing as herein provided".

However, it seems that in the Act of 1931, and the amendment thereof, the legislature recognized the distinction between the superiority of a lien for taxes in point of time, and its superiority in point of payment: The Northern Liberties v. Swain, 13 Pa. 113; Gordon, etc., v. Harrisburg et al., 314 Pa. 70; and protected the right to priority of payment, for section 4, as amended, 72 PS §5971d, provides:

"All taxes unpaid and so returned and docketed, as

aforesaid, shall be a first lien, subject as hereinafter stated, on said real estate liable for the payment thereof, together with all charges, interest, expenses and fees added thereto for failure to pay promptly; and such liens shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property before any mortgage, obligation, claim, lien or estate with which said property may have or shall become charged or for which it may become liable, save and except only the costs of the sale and of the writ upon which it is made, and liens in favor of the Commonwealth of Pennsylvania, which shall have priority to such tax liens."

This section further provides that taxes so returned shall be a first lien for 5 years from the date of their return, unless sooner discharged or extended as in the act provided.

Section 5, as amended, provides that the taxes so returned and docketed shall remain a lien upon the property "until fully paid and satisfied, or until the property shall be sold in accordance with provisions hereof".

At first glance it might seem that the legislature intended the lien to cease upon the act of the county treasurer striking off the land to the purchaser and making conveyance, but further consideration of other sections of the act impels the conclusion that the word "sold" as used in the fifth section connotes not only the striking off of the lot to the bidder and the delivery of the treasurer's deed, but also the expiration of the period of redemption, for section 9 of the act provides:

"When any real estate is so sold, no lien whatsoever against such real estate shall be deemed to be discharged during the period for redemption; but if such real estate is not redeemed, then all liens against the same, except such liens as are hereinbefore specifically saved, shall be deemed to be discharged from the date that the right of redemption expired."

It seems that the plain intent of the act is that unpaid taxes returned and entered, together with all charges,

interest, expenses and fees, added thereto for failure to pay promptly, shall be first paid and satisfied out of the proceeds of any judicial sale of the property after the payment of the costs of the sale and writ and liens in favor of the Commonwealth.

By section 15 of the Act of 1931, 72 PS §5971o, it is provided that upon redemption from a tax sale, the purchaser shall be entitled to taxes, interest and costs "with an additional sum of twent-five per centum". The lands involved in the present controversy were not redeemed, and we do not find in section 4 of the act, above quoted, any term broad enough to include the additional sum of 25 percent. We, therefore, conclude that W. C. and B. E. Simmons are entitled to receive the sum of $109.11 with interest from the date of payment thereof to the county treasurer to the date of sale, but not the redemption fee of $27.28, and that Hugh B. Strang is entitled to receive the sum of $110.79 with interest from the date of payment thereof to the county treasurer to the date of sale, but not the redemption fee of $27.70.

To reach the conclusion contended for on behalf of the intervenor, namely, that when the land in question was struck off at treasurer's sale, the lien for the taxes ceased, would require us to find that the legislature deliberately set up a system whereby mortgagor and mortgagee acting in concert could utterly defeat collection of taxes upon the mortgaged premises for a period of at least 2 years. This we could not do, even though the legislature had omitted from the act the direction that the same should "be fully paid and satisfied out of the proceeds of any judicial sale of said property before any mortgage".

## Decree

And now, July 9, 1935, the sheriff is directed to make schedule of distribution in accordance with the foregoing opinion, to file the same, and to proceed therewith de novo.                    From Archibald F. Jones, Coudersport.