## Pittsburgh Trust Company, etc., v. Red Bank Coal Company et al.

*Howard R. Panton*, for exceptant.
*Albert A. Geary*, contra.

RIMER, P. J., January 27, 1938.—This comes before the court on the exceptions filed on behalf of plaintiff in the writ to the sheriff's schedule of distribution of the proceeds of the sale of real estate of defendant, Red Bank Coal Company. The facts sufficiently appear from the exceptions filed, the schedule of distribution itself, and the stipulation of counsel for the parties as to the facts, as follows:

*Exceptions to sheriff's sale*

And now, August 31, 1935, the Pittsburgh Trust Company, now Peoples Pittsburgh Trust Company, a Pennsylvania Corporation, a party in interest in the proceedings of the sale in this case, by its attorney, Howard R. Panton, files the following exceptions to the return of the sheriff, made in this case.

1. The amount set aside as taxes to J. F. Mortimer, Collector of Madison Township, in the sum of $40.66, is unjust to the Exceptant in that, the said taxes, as shown by copy of statement of J. F. Mortimer, Collector of Madison Township, hereto attached and made a part hereof, are for taxes assessed against the Monarch Coal Company for the year 1936, and the lands so assessed were not a part of those sold under the writ in this case, inasmuch as the record title to said lands was in the County of Clarion, Pennsylvania.

And, the said amount of $40.66, should be allowed as payment on the writ of your exceptant, the Pittsburgh Trust Company, now Peoples Pittsburgh Trust Company, a Pennsylvania Corporation, they having a first lien on the property sold by the said sheriff as the property of the defendants, as shown in the caption above.

2. The schedule of distribution, as filed by the sheriff, a copy of which is hereto attached, sets aside the sum of $451.31 to apply on taxes to Clarion County, which is unjust to the exceptant in that said taxes were not a lien on the lands sold under the within writ. The taxes for 1930 and 1931, as shown by copy of tax bill of Clarion County, Pa., attached hereto and made a part hereof, having been divested by a treasurer's sale, held October 26, 1932, to the County of Clarion, Pa., and the taxes following 1931 not having been assessed on the regular tax assessment books of Clarion County, Pennsylvania.

And, the said amount of $451.31 should be allowed as payment on the writ of your exceptant, the Pittsburgh Trust Company, now Peoples Pittsburgh Trust Company,

a Pennsylvania Corporation, they having a first lien on the property sold by the said sheriff as the property of the defendants, as shown in the caption above.

Your petitioner, exceptant, therefore prays that the return of the sheriff be corrected in accordance with the law as applied to the facts above set forth.

*Schedule of distribution*

### E. D. No. 21 of August Term 1936

| | |
|---|---:|
| Real Estate sold for the sum of . . . . . $1,000.00 | |
| Sheriff costs on sale of property . . . . . . . . . . . | 18.15 |
| Sheriff's poundage . . . . . . . . . . . . . . . . . . . . . | 20.00 |
| Costs as attached on within writ . . . . . . . . . | 17.75 |
| Advertisement in both County Newspapers . . . | 126.00 |
| Deed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6.50 |
| List of liens (Prothonotary Elliott) . . . . . . . . | 2.45 |
| List of liens (Reg. & Rec. Thompson) . . . . . . | .50 |
| Taxes to J. F. Mortimer, Collector of Madison Township . . . . . . . . . . . . . . . . . . . . . . | 40.66 |
| Corporation taxes . . . . . . . . . . . . . . . . . . . . . . | 315.18 |
| Documentary sales stamp . . . . . . . . . . . . . . . | 1.00 |
| State tax . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | .50 |
| To apply on taxes to Clarion County . . . . . . . . | 451.31 |
| | $1,000.00 |

So Answers
S. Cliff Elder
Sheriff

*Specification of facts*

And now, December 17, 1937, comes Howard R. Panton, attorney for plaintiff and A. A. Geary, attorney for defendant, the Commissioners of Clarion County, and agree upon the following specification of facts in the above entitled case.

1. That the real estate involved in this case was sold at tax sale by the treasurer of Clarion County on October

26th, 1932, to the County of Clarion, Pennsylvania, and has not been redeemed.

2. That subsequently on August 22, 1936, the real estate involved in the above entitled case was sold on execution under a first mortgage given by the Red Bank Coal Company to Pittsburgh Trust Company, now Peoples Pittsburgh Trust Company, a Pennsylvania Corporation, trustee, at No. 21 E. D. August Term 1936 to Eva F. Rupert of Pittsburgh, Pa., after the period allowed for redemption under the tax sale afore-mentioned.

3. That the item in sheriff's schedule of distribution at E. D. No. 21 August Term 1936, 'To apply on taxes to Clarion County, $451.31' is admitted to have reference to and cover taxes on the real estate involved, but said taxes were not, subsequent to the year 1931, levied or assessed in the Regular Assessment Books of the County, but records of assessment and levy were kept in Special County Books as provided for by act of legislature.

4. That the item in sheriff's schedule of distribution at E. D. No. 21 August Term 1936, 'Taxes to J. F. Mortimer, Collector of Madison Township, $40.66' were apparently assessed on two certain properties, being part of the real estate involved in this case and sold by the Commissioners of Clarion County to Wayland Rupert by deed dated January 30, 1935, recorded in Deed Book Volume 133, Page 448.

From the above it will appear that we have here for distribution by the sheriff proceeds from the sale of real estate on a first mortgage given by Red Bank Coal Company to a trustee, the Peoples Pittsburgh Trust Company, at the time of the sale. This sale, made by the said sheriff on August 22, 1936, was the result of foreclosure proceedings under the said mortgage.

The real estate involved, and covered by said mortgage, had been sold by the Treasurer of Clarion County on October 26, 1932, for unpaid taxes, to the County of Clarion, claimant herein, and had not been redeemed up to December 17, 1937.

The item in the schedule of distribution "To apply on taxes to Clarion County $451.31" was for taxes on the real estate sold at the sheriff's sale and covered by the mortgage, beginning with the year 1932. Such taxes were not levied or assessed in the regular assessment books of the county, but records of such assessment and levy were kept in special county books as provided by law.

The other item excepted to "Taxes to J. F. Mortimer, Collector of Madison Township, $40.66", was apparently assessed on two properties thus sold, but which had been sold by the Commissioners of Clarion County to Wayland Rupert by deed of January 30, 1935, Clarion County Deed Book, vol. 133, p. 448.

As to this item, the facts agreed upon by counsel are not so definite, but it does appear that the real estate taxed was a part of that sold and was involved in the proceedings in foreclosure. It is true there was a sale by the commissioners, but the court is not inclined to aid the parties to escape the payment of taxes. We think the facts stated, taken in connection with the claim of the tax collector, are sufficient to fix the liability for the taxes claimed upon these lands, particularly since we find them to have been claimed from Monarch Coal Company, one of the defendants in the foreclosure proceedings. The contention of exceptant is that since the lien of the mortgage is that under the Act of April 30, 1929, P. L. 874, 21 PS §651, the foreclosed mortgage had priority over the tax liens upon which distribution was made.

The provisions of that act which affect this question are as follows:

"That when the lien of a mortgage upon real estate is or shall be prior to all other liens upon the same property, except other mortgages, ground rents, and purchase money due the Commonwealth, and except taxes, municipal claims and assessments, not at the date of said mortgage duly entered as a lien in the office of the prothonotary of the proper county, *and except taxes,* municipal claims and assessments *whose lien though afterwards*

*accruing* has by law priority given it, *the lien of such mortgage shall not be destroyed or in anywise affected by any judicial sale, or other sale whatsoever, except as hereinafter stated, whether such sale be made by virtue or authority of any order or decree of any orphans' or other court, or of any writ of execution or otherwise howsoever: Provided, That this section shall not apply to cases of mortgages upon unseated lands, or sales of the same for taxes"*. (Italics ours.)

It is thus evident that the mortgage in question falls within the classification of mortgages, the liens of which are preserved under the terms of this act. There has been no sale, prior to the present foreclosure proceedings, which, under the provisions of this act, would destroy or affect the lien of the mortgage involved in this foreclosure.

In this connection we must consider also the Act of May 29, 1931, P. L. 280, as amended by the Act of May 22, 1933, P. L. 940, 72 PS §5971a et seq.

Section 4 of the Act of 1931, supra, as thus amended, follows the provisions for the return by tax collectors and the entry of taxes so returned by the proper officers, together with the certification thereof to the county treasurer, and provides:

"All taxes unpaid and so returned and docketed, as aforesaid, shall be a first lien, subject as hereinafter stated, on said real estate liable for the payment thereof . . . and such liens shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property before any mortgage, obligation, claim, lien or estate with which said property may have or shall become charged or for which it may become liable, save and except only the costs of the sale and of the writ upon which it is made, and liens in favor of the Commonwealth of Pennsylvania, which shall have priority to such tax liens. *All taxes returned under this or any previous statute supplied hereby shall be first liens for a period of five years from the date of their return unless sooner discharged or extended as hereinafter provided.*"

The amending portion of the Act of 1933 is shown by italics.

In construing the provision of section 4, supra, we note that there are two provisions making the taxes in question first liens upon the real estate against which they are assessed. In the original act taxes "returned and docketed as aforesaid" are said to be the first lien. This relates to section 1 of the Act of 1931, which makes it the duty of collectors of taxes to return to the county commissioners the taxes remaining unpaid, together with a description of the real estate taxed. By section 2 of the same act the commissioners enter in the tax return docket the returns so made, "which return and entry shall constitute a lien on such lands."

Then the commissioners are required to certify said returns, with all previous returns for delinquent taxes in their office under any former law, to the county treasurer, who is authorized to collect the taxes and who "shall sell the seated lands upon which such taxes were assessed and levied to secure the payment of such taxes as are unpaid." These are evidently the taxes returned and unpaid thus referred to in the original act.

But the amendment of 1933, above given, makes "all taxes returned under this or any previous statute supplied hereby" first liens for five years from the date of return. In this connection we must consider section 16 of the Act of 1931, supra, as amended by the Act of July 19, 1935, P. L. 1321, 72 PS §5971p, and which will be given later.

Before coming to that, however, we must note the provisions of section 5 of the Act of 1931 as thus amended by the Act of 1933, supra, which provides:

"Such tax so returned and filed and entered upon said docket [tax return docket in the commissioners' office] shall remain a lien upon said property until fully paid and satisfied, or until the property shall be sold in accordance with the provisions hereof".

This is followed by a provision limiting the liens to five years unless extended as therein provided. We now come to the question of whether the amendment of section 4 of the act, which says that all taxes returned under the Act of 1931, etc. shall be first lines for five years, etc., includes the taxes charged against lands while the title is in the county. These taxes are not levied and assessed against the lands thus held by the county under the general provisions of law, nor are they returned under the general provisions of the Act of 1931, as above given. The procedure as to them is fixed by section 16 of the Act of 1931, as amended by the Act of 1935. We quote the Act in its amended form from 72 PS §5971p, since the amendment of 1935 made no essential change in the act except to extend the period for the entering of taxes from two years to five years. Section 16, as amended, is as follows:

"Section 16. When the county commissioners shall purchase any real property at a county treasurer's sale, they shall provide a book wherein shall be entered: (a) the name of the person as whose land the same was sold; (b) a brief description of the property, together with any lot and block number; (c) the amount of taxes, interest, and costs for which it was sold. Such property shall not, so long as it remains the property of the county, be charged in the duplicate. For the next five years following such sale, if the land remains unredeemed, the commissioners shall, in separate columns in the same book, charge every such tract of land with like county, city, borough, town, township, school and poor taxes, as would have been chargeable against the land had the same not been purchased by the county commissioners. The right of redemption shall remain in the real owner of such lands, or other persons interested, for five years after sale to the county commissioners, and such redemption may be accomplished by a payment, within such period, to the county treasurer of all taxes, interest, and costs due thereon at the time of sale, and interest thereon, and also the taxes and interest which have been annually

levied and charged thereon after the sale, and interest thereon beginning on the first day of January in the year succeeding the year when the respective taxes were levied. All redemptions of property purchased by the county commissioners shall be noted upon their records, and the county treasurer shall forthwith cause an entry of redemption to be made on the records in like manner as if such property were purchased by other than county commissioners."

We have come to the conclusion that taxes thus charged against the lands under the provision of the foregoing section are "taxes returned" under the system for the collection of taxes provided by the Act of 1931 and are therefore declared to be first liens for a period of five years.

We then come to the provisions of section 9 of the Act of 1931, as amended by the Act of July 12, 1935, P. L. 661, see 72 PS §5971i. This section relates to sales under the general provisions of the Act of 1931 and the portions which relate to the present question are as follows:

"No such sale shall discharge the lien of any mortgage which shall have been recorded before such taxes became liens by return and docketing as herein provided, and which is or shall be prior to all other liens, except other mortgages, ground rents, municipal claims, and/or other taxes, and no such sale shall discharge the lien of any ground rent, municipal claim, or tax remaining unpaid."

Then follows the provision for redemption within five years after the sale when the lands have been purchased by the county; otherwise within two years after the sale, and the following provision is relative to liens in such event:

"When any real estate is so sold, no lien whatsoever against such real estate shall be deemed to be discharged during the period for redemption; but if such real estate is not redeemed, then all liens against the same, except such liens as are hereinbefore specifically saved, shall be deemed to be discharged from the date that the right of redemption expired."

A reference to the portion of section 9 above given shows that the liens specifically saved are: (*a*) The lien of any mortgage recorded before such taxes became liens, etc., and which is prior to all other liens, except other mortgages, ground rents, municipal claims and/or other taxes; (*b*) liens of any ground rent, municipal claim or tax remaining unpaid.

From this it will appear that the tax sale of 1932 did not discharge the mortgage in question, nor did it discharge any tax remaining unpaid. These liens remained in full force after the time for redemption had expired because they were specifically saved in this section from the effect of the provision therein discharging liens. So far as this section is concerned, the lien of the mortgage in question was preserved.

We have for consideration the Act of May 22, 1895, P. L. 111, 53 PS §§2022a and 2022b.

The first section of this act provides that the lien of all taxes "now or hereafter to be levied or assessed against any real estate" shall be divested by any judicial sale, provided the proceeds of such sale equal the amount of the taxes. By the notice attached to the sheriff's return it appears that the claim of the county for the years 1930 to 1936, inclusive, amounts to $5045.49, thus exceeding the proceeds of sale, $1,000.

By the second section of this act the officer having such taxes for collection is required to give notice to the officer selling the land of the "amount" of the taxes against the same;

"and the officer selling such land shall pay said taxes out of the proceeds arising from the sale *first* after payment of the costs of sale."

From the foregoing we are to determine whether the balance in the hands of the sheriff is to be awarded to these claims for taxes or to the trustee in the mortgage. The case nearest in point, in respect to facts, is that of Federal Land Bank of Baltimore v. Dimon et al., 23 D. & C. 665, the difference in facts being that there the

lands were sold to individual purchasers and not to the county. The decision of Judge Lewis in this case is found in 23 D. & C. 665. The mortgaged premises were sold on March 1, 1934, for the 1931 taxes. The lands were sold on April 15, 1935, under foreclosure proceedings in said mortgage. The sheriff's return ignored the claims of the purchasers for taxes and costs paid by them (there was no redemption). The court awarded them the amount of taxes and costs, but not the penalty of 25%.

The present case is distinguished from the above case in that there the claim for taxes was made by the purchasers at the tax sale. Here the claim is made by the taxing authority itself and the collector of taxes. The logic of Judge Lewis' decision, however, applies to this case, insofar as his reasons for awarding the taxes, interest and costs paid by the purchasers at the tax sale to those purchasers are concerned. We must agree with him that to decide otherwise would require us to find that the legislature deliberately set up a system whereby mortgagor and mortgagee, acting in concert, could defeat the collection of taxes upon the mortgaged premises. Justification for this decision is found in the following decisions of our Supreme Court.

In The Northern Liberties v. Swain, 13 Pa. 113, the court had for consideration the sale of mortgaged premises upon a subsequent lien for taxes. The sale was held prior to the Act of April 16, 1845, P. L. 488, which provided that the continuance of the lien of the mortgage shall not prevent the discharge of such prior liens for taxes by a sale under a subsequent judgment or the satisfaction thereof out of the proceeds of sale. The liens in question were entered by the municipality under the Act of March 27, 1824, P. L. 85, and the Act of February 3, 1824, 8 Sm. L. 189, which gave to such liens priority over mortgages and other liens mentioned. However, the foundation for the theory adopted by Judge Lewis is found in the following statement by Mr. Justice Bell in

speaking of the apparent contradiction of the several acts:

"Although this statute and its supplement of 1835, are so obscurely framed as to have required the aid of judicial exposition, it is not difficult to perceive the object in enacting the younger, was to interfere with the elder, only so far as was necessary to prevent the disturbance of a mortgage, through a posterior sale, by force of the paramount statutory lien conferred on municipal assessments. The intent was to provide that in estimating the legal influence of a sale under a younger incumbrance upon the rights of a prior mortgagee, municipal assessments shall not be regarded as superior liens in point of time, without, however, depriving them of the preference given by statute and the incidents attending it for other purposes."

This was more fully developed by Mr. Justice Kephart, present Chief Justice, in Gordon, etc., v. Harrisburg et al., 314 Pa. 70. The question then before the Supreme Court was whether a sale for delinquent taxes under a third class city act divested the lien of a first mortgage recorded prior to the tax levy. The court below decided that such a sale by the city treasurer under this act did not discharge the lien of the mortgage because there was no statutory authority for such discharge. However, we are particularly interested in the following statement of the principles laid down in the preceding case as follows:

"The legislative intent, however, culminating in the Municipal Lien Act, supra, was to regard taxes as liens superior in point of *payment* to all other liens, but not to regard them as superior in point of *time*."

The foregoing rule furnishes us the key to the reconciliation of the apparently contradictory provisions of the legislation affecting conditions such as we have here. The Act of April 30, 1929, supra, says that the lien of a mortgage such as we have here shall not be destroyed or in anywise affected by any sale other than the sales therein referred to and which have not occurred in this case.

Under this act the tax sale did not in anywise affect the lien of the mortgage.

This is supplemented by section 9 of the Act of 1931, supra, which provides that sales under that act shall not discharge the lien of any mortgage recorded before the taxes became liens, nor the lien of any tax remaining unpaid. Thus we have the lien of the mortgage and the lien of the taxes in question remaining in full force after the tax sale, not only during the period provided for redemption but also subsequent thereto, because both liens are specifically saved from such discharge by the section itself.

But now we have a distribution upon a foreclosure sale on the mortgage and section 4 of the Act of 1931 says that the lien for taxes returned and docketed as in this case shall: (*a*) Be a first lien on said real estate; (*b*) have priority to and be fully paid and satisfied out of the proceeds of any judicial sale before any mortgage with which the property may have or shall have become charged, or before any claim save and except only the costs of the sale, of the writ, and liens in favor of the Commonwealth; (*c*) by section 5 of the Act of 1931 the tax so returned and filed and entered remains a lien upon the property against which it is assessed until fully paid and satisfied or until the property be sold.

Following the rules laid down by the Supreme Court in the cases cited above, we are able to justify the apparently contradictory provisions of the several acts which relate to the controversy here by reconciling them. Thus we give effect to the acts of assembly which tend to preserve the lien of a first mortgage from discharge by a tax sale or any other sale, except as specified therein. On the other hand we follow the governmental policy of rendering effective, upon distribution, tax liens, making them first liens in such event and entitled first to payment. We thus conclude that the taxes claimed from the proceeds of this sale have priority of payment. This calls for an order dismissing the exceptions in this case, which will be made.

320

*Order dismissing exceptions*

And now, January 27, 1938, the exceptions of plaintiff to the return of the sheriff and schedule of distribution in this case are dismissed and said return and schedule of distribution confirmed absolutely.