## Chinn Tax Compromise

*C. W. Martin*, for petitioners.

*Wm. H. Soisson, Jr.*, for respondent.

*Samuel D. Braemer*, for school district.

DUMBAULD, P. J., August 2, 1940.—On August 1, 1939, at a treasurer's sale for delinquent taxes in Fayette County, the county commissioners became the purchasers of a lot or parcel of land, situate in the fourth ward in the City of Connellsville, and being the same premises conveyed to Alec Chinn, by deed of Mary Byrne Wurtz and John T. Wurtz, her husband, dated October 16, 1923, and recorded in the Recorder's Office of Fayette County, Pa., in deed book vol. 411, p. 307.

The petition of the county commissioners sets forth that taxes on this property for the years 1931 to 1938, both inclusive, became delinquent and were returned to the county commissioners. These taxes amount to $1,687.75. By regular procedure, the property was sold by the county treasurer to the county commissioners.

Alec Chinn, the former titleholder of this property, has offered the sum of $840.88 in compromise settlement of

these taxes and as a consideration for the conveyance to him of whatever right, title, interest, claim, and demand petitioners, as commissioners of Fayette County, may have in and to the premises.

Paragraph 8 of the petition alleges that petitioners are advised, believe, and therefore aver that the said offer is fair, equitable, and just, under the circumstances surrounding the case; that the total amount of the taxes returned as above stated exceeds the net amount which could be realized at a tax sale of said real property, and is more than could be realized by enforced collection against the owner; and that a compromise and sale on said basis is proper and to the advantage of the taxing authorities interested.

The prayer of the petition is that the court may approve the said compromise and authorize and direct petitioners, as county commissioners, to execute and deliver to the said Alec Chinn a commissioners' quitclaim deed, conveying the said property for the consideration aforesaid, upon payment thereof, and of the costs of this proceeding.

We are of one mind that we should withhold approval of this compromise.

The Act of May 21, 1937, P. L. 787, provides for a hearing before the court. If, after such hearing, the court is satisfied that the proposed compromise is proper and to the advantage of the county and of the taxing authorities interested, it shall enter a decree approving such compromise settlement or such other settlement as the court may find to be proper and directing a conveyance of such property by the county to the former owner or his heirs, upon the payment of the agreed amount and of all costs of the proceeding.

A hearing was held in this case and ample opportunity was given for the taking of testimony. The proofs adduced do not convince the court that the offer is fair, equitable, and just, nor is the sum offered more than could be realized by enforced collection against the owner.

Neither are we convinced that a compromise and sale on the proposed basis is proper and to the advantage of the taxing authorities interested.

The testimony shows that the property in question is a commodious dwelling located in a desirable residential section of the city and has a present market value of $5,500. Neither the mortgagee nor the owner of the property has seen to the payment of any taxes during the eight or nine years within which the total of $1,687.75 accumulated. The county and other taxing units have received no revenue from this property during all those years. To approve this compromise now is in fact permitting the owner and mortgagee of this valuable property to escape with the payment of less than $100 per year for all taxes, county, city, and school. During this same period the neighbors of this owner have, by dint of struggle and sacrifice, paid the entire assessment of taxes against similar properties similarly situated. The court, as well as the taxing authorities, owes some consideration to those taxpayers who have kept the wheels of local government moving by regular payment of tax levies.

In calculating the equity of the former owner, petitioners deduct the $5,000 mortgage from the market value, $5,500, and fix the owner's equity at $500. They say that in offering $840.88 the former owner is offering more than his equity in the property. They overlook the significant fact that the taxing authorities have an equity superior to the equity of the mortgagor or the mortgagee. They fail to take into account the fact that before the mortgagee can be paid the full amount of his mortgage he must see that the taxes are paid. A mortgagee may not sit idly by and permit his mortgagor to default in payment of taxes year after year and then in a proposed compromise have the full amount of his mortgage deducted from the market value of the property in determining the equity of the taxing authorities.

It is true that the tax sale by the treasurer to the commissioners did not discharge the lien of this mortgage

recorded before the assessment of the taxes. It is also true that taxes properly assessed, and returned, are continuing liens superior in point of payment to all other liens, including that of the mortgage in question. In any proceeding by the mortgagee to foreclose and collect his mortgage, the taxes are first payable out of the proceeds. In determining equities it is therefore distinctly unfair to taxing authorities to first deduct from the market value of the property the full amount of the mortgage on the theory that the mortgagee will participate in the proceeds of sale ahead of the lien of the taxes.

"Without statutory direction or authority the lien of a prior mortgage is not disturbed by a sale for taxes. The legislative intent, however, culminating in the Municipal Lien Act, supra, was to regard taxes as liens superior in point of *payment* to all other liens, but not to regard them as superior in point of *time*. See Northern Liberties v. Swain, 13 Pa. 113, 115": Gordon, etc., v. Harrisburg et al., 314 Pa. 70, 73.

While the legislature by the Act of April 30, 1929, P. L. 874, the Act of May 29, 1931, P. L. 280, and the Act of June 20, 1939, P. L. 498, has assured the integrity of the first mortgage lien by providing that it should not be disturbed by a tax sale, it has nowhere given priority in payment to the mortgagee ahead of the taxing authorities.

An exceedingly lucid discussion of this problem is that of Lewis, P. J., of the Court of Common Pleas of Potter Co., in Federal Land Bank of Baltimore v. Dimon et al., 23 D. & C. 665. He closes this discussion with these words (p. 667) :

"It seems that the plain intent of the act is that unpaid taxes returned and entered, together with all charges, interest, expenses and fees, added thereto for failure to pay promptly, shall be first paid and satisfied out of the proceeds of any judicial sale of the property after the payment of the costs of the sale and writ and liens in favor of the Commonwealth."

18

We should call attention to a discussion of this subject by Mr. Justice Linn, in a recent opinion which has attracted much attention in legal circles. The case is Erie v. Piece of Land, 339 Pa. 321.

We quote (p. 325):

"We are equally clear that even if the Acts of 1901 and 1915 had not been in effect when the mortgage was recorded, the city would be entitled to the benefit of the Act of 1923 and that no impairment of the contract between the mortgagor and the mortgagee would result from the discharge of the lien of the mortgage if the mortgagee elects not to pay the taxes. The purpose of such legislation is to enable the government to collect its tax. For as long as ten years, taxes have remained unpaid on this mortgaged property. The double nature of a mortgage as an estate and as a security is familiar. By recording the mortgage, the mortgagee obtained a lien which had certain statutory preference. . . . That the mortgage was made and recorded before the act was passed, is no constitutional objection to the application of the Act of 1923. The statute applies to all mortgaged lands; the legislature had the power to tax the mortgagee's interest in the land. The procedure enables the mortgagee to have his day in court and protect his lien by paying the tax if he does not wish to lose the lien; he has the alternative; the statute provides: 'Any person interested may, at any time before the sale, pay the petitioner the whole of his claim, with interest and costs, whereupon the proceedings on petition shall at once determine.' There is no legal reason why the legislature should not require a mortgagee, who has had the protection of the government, to submit to the collection of the taxes out of the land against which they are assessed if his own debtor neglects to pay them. The procedure was prospective; that its application would operate on relations theretofore existing did not make the statute retroactive in any prohibited sense; compare *City of Johnstown v. Dibert*, 88 Pa. Superior Ct. 117, 120. The land had always been subject to taxation. If a mortgagee

elects not to foreclose for default in payment of taxes on the land he holds as security, he does not, by his election, exempt his interest or estate in the land from taxation; no law gives him such right of exemption. When he secured his loan by taking the mortgage, he did so with knowledge that the land was, and would continue to be, taxed. *He will not be heard to say that because he had a lien under the recording acts, the government must go without its taxes.* All his relations growing out of his contract with his debtor were subject to the implied condition that the taxes must be paid out of the land. There is therefore no impairment of his contract with the mortgagor." (Italics supplied.)

In the light of these legislative enactments and judicial declarations, we may not approve an agreement which reduces the market value of the property involved and the equity of the owner, as well as the equity of the taxing authorities therein by the full amount of the mortgage lien.

It behooves the mortgagee and the taxing authorities to coöperate in the collection of taxes assessed against mortgaged premises. In the last analysis, in every year that taxes are returned delinquent, the value of the mortgage security is reduced by the amount of the delinquent tax. As the situation appears to us, there is no possible way that the mortgagee may realize on his loan without first seeing that the delinquent taxes are paid in full. In our case, we see no reason why the county commissioners should concede to the mortgagee the right to regard the mortgage as payable in its entirety ahead of the payment of the delinquent taxes. From this viewpoint, we regard it as entirely probable that the former owner of land and the mortgagee together can and will pay the full amount of the delinquent taxes.

We do not feel called upon to discuss the other real estate owned by Mr. Chinn. The tax problem to be determined by us is that of his home property described in the petition.

The Board of Directors of the School District of the City of Connellsville has protested aganst the approval of this compromise and has raised interesting questions as to the distribution of the proceeds of such compromise, as well as the right of the court to give such approval over the protest of one or more of the tax-levying municipalities.

The learned counsel for the school district has also interjected the question of the constitutionality of the several acts of assembly, permitting and authorizing such compromise and approval.

We do not feel called upon to determine those questions, since we refuse approval upon the merits of the case.